UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2007 SEP -7 P 4: 40

| | |
|---|---|
| Curves International, Inc.,<br><br>              Plaintiff,<br><br>vs.<br><br>Linda S. Mosbarger,<br><br>              Defendant | Case Action No. 2:07CV 807- MHT<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

Defendant Linda S. Mosbarger formerly enjoyed a license to display the CURVES® trademarks and service marks in connection with the operation of a franchised CURVES® fitness and weight loss center in Deatsville, Alabama. Mosbarger's operation of that franchised business was entirely dependent on her compliance with the terms of a Franchise Agreement she entered with Plaintiff Curves International, Inc. ("Curves"). Through her participation in the CURVES® franchise system, Mosbarger received access to Curves' confidential and proprietary business information, which she used to operate her franchised business for more than seven years. In return for the benefits she received as a franchisee, and to protect Curves from unfair competition by a former franchisee with knowledge of Curves' business system and confidential information, Mosbarger agreed to be bound by a post-termination covenant against competition. That covenant bars Mosbarger from operating or engaging in a business competitive with CURVES® fitness and weight loss facilities for a period of three years after she first stops competing with Curves, within a defined radius of the territory she formerly served as a franchisee.

With more than two years remaining on the Franchise Agreement she executed, Mosbarger informed Curves in October 2006 that she had abandoned her franchised location and did not intend to re-open it. Accordingly, by letter dated November 16, 2006, Curves informed Mosbarger that the abandonment of her franchise constituted a breach of the Franchise Agreement, and that Curves had decided to exercise its option to terminate that Agreement, effective immediately. Curves' letter reminded Mosbarger of the post-termination obligations she had accepted, including the obligation to refrain from competing with Curves and its other franchisees for a period of three years. Despite that reminder, Mosbarger has breached the post-termination provisions of the Franchise Agreement by opening a business named "Jordan's Gym" in the same territory in which she formerly operated her CURVES® franchise. Mosbarger's new business provides the same type of weight loss and fitness services and products that Mosbarger formerly offered as a CURVES® franchisee, and continues to use the same telephone number Mosbarger formerly used in connection with her CURVES® business. Mosbarger's operation of a competitive business within the same territory she formerly served as a CURVES® franchisee represents a serious breach of the covenant against competition she accepted through the Franchise Agreement. Mosbarger's refusal to comply with her post-termination obligations has left Curves no alternative but to seek an order from this Court requiring Defendant to cease her unlawful conduct.

## II. FACTUAL BACKGROUND

Curves is the franchisor of a business system for the operation of weight loss and fitness facilities of a distinctive character and quality that operate under the famous CURVES® trademarks and service marks (the "Marks"). (Certification of Kevin D. Ayers ("Ayers Cert."), ¶ 3, attached hereto at Tab 1). Curves has more than 10,000 franchised locations around the world.

(*Id.* at ¶ 6). Each of those franchised locations is operated in accordance with Curves' distinctive business system for the operation of weight loss and fitness facilities, and is easily identified with the well-known CURVES® Marks. Curves has spent substantial amounts of time and money advertising and promoting the CURVES® Marks throughout the United States. (*Id.* at ¶ 4).

Curves has established standard policies and procedures to govern the operation of its franchised businesses to protect the valuable goodwill and uniformity associated with its Marks and distinctive business system. (Ayers Cert., ¶ 3). Persons who desire to become CURVES® franchisees must agree to conform to Curves' uniform requirements and quality standards as established by Curves, as well as abide by all terms and conditions contained in the CURVES® Franchise Agreement. (*Id*). In return for that compliance, franchisees receive access to the CURVES® Marks and business system, as well as the confidential and proprietary business information developed by Curves over the course of many years of franchising such businesses. (*Id.* at ¶ 10).

## A.    The Franchise Agreement

Mosbarger became a CURVES® franchisee by entering into a Franchise Agreement with Curves dated April 5, 1999. (Complaint, Ex. A). By its terms, that Agreement gave Mosbarger the license and right to operate a CURVES® fitness and weight loss facility in a defined territory in Deatsville, Alabama for a period of ten years, or until April 5, 2009. (*Id.*). The Franchise Agreement made clear that Mosbarger could not prematurely terminate the Agreement without Curves' consent. (*Id.*, Article 11(C)).

As a franchisee, Mosbarger received access to Curves' trade secrets and other confidential business information. Pursuant to Article 9(A) of the Franchise Agreement, Mosbarger agreed that:

> In order to protect the reputation and goodwill of Franchisor, to maintain uniform standards of service and operation under Franchisor's Trademark and system, to promote the goodwill of Franchisor's system, and for the mutual benefit of Franchisor and Franchisee, Franchisor shall provide Franchisee with manuals and Franchisor's system in accordance with this Agreement. Franchisee acknowledges that all manuals are confidential and Franchisee does not acquire any right, title or interest in the manuals. The manual, and the information contained in them, shall at all times remain the property of Franchisor. Franchisee also acknowledges that Franchisor has developed, and may continue to develop or revise in the future, the system pertaining to the Franchise, and further acknowledges that this system, together with information pertaining to customers of the system, are trade secrets of Franchisor which have been developed through the research of and at the expense of Franchisor.

(Complaint, Ex. A). Mosbarger further agreed that her franchise rights could be terminated if she failed to comply with any of her obligations under the Franchise Agreement. Among other things, Mosbarger agreed that Curves could immediately terminate Mosbarger's franchise rights if Mosbarger abandoned her franchised location. (*Id.*, Article 11(A)(4)).

**B.      Mosbarger's Abandonment of her CURVES® Franchise**

Mosbarger breached the terms of her Franchise Agreement by abandoning her franchised location without Curves' consent. (Ayers Cert., ¶ 11). In October 2006, Mosbarger informed Curves that she had closed her franchised location and did not plan to re-open it. (*Id.*). Curves responded to Mosbarger's abandonment by informing Mosbarger by letter dated November 16, 2006, that her franchise rights were terminated, effective immediately. (Complaint, Ex. B). In its letter, Curves also reminded Mosbarger of the post-termination obligations she had accepted through the Franchise Agreement and demanded that Mosbarger comply with those obligations.

Most significantly, Mosbarger agreed to be bound by a reasonable post-termination covenant against competition upon the termination of her franchise rights. Pursuant to Article 9(B) of the Franchise Agreement, Mosbarger agreed that:

> Franchisee shall not, directly or indirectly, as a proprietor, partner, investor, shareholder, member, director, officer, employer, employee, principal, agent, adviser, franchisor, franchisee, consultant or in any other individual or representative capacity or otherwise

4

for a period of three (3) years immediately following the later of the expiration, termination or non-renewal of this Agreement for any reason or the date on which Franchisee actually ceases operation…engage in or participate in or derive any benefit from any similar business to that licensed and established under and pursuant to this Agreement within forty (40) miles of the areas listed on 'Schedule A' herein, without Franchisor's prior written consent.

(Complaint, Ex. A). Mosbarger further agreed that "the damage caused to Franchisor by Franchisee's violation of any portion of this Section 9 shall constitute irreparable injury for which there is no adequate remedy at law and, accordingly, acknowledges and agrees that Franchisor may seek enforcement of this Section 9 by temporary restraining order, temporary and/or permanent injunction, and such other legal or equitable relief as may be appropriate." (*Id.*, Article 9(C)).

In addition to the obligation to refrain from competing with Curves, Mosbarger further agreed to comply with a number of additional post-termination obligations as set forth in Article 12 of the parties' Agreement. Most relevant for purposes of the instant motion, Mosbarger agreed to transfer to Curves the telephone number formerly associated with her franchised business and return all printed materials that Curves had provided to Mosbarger, including the confidential operations manual. (Complaint, Ex. A).

**C.    Mosbarger's Breach of her Post-Termination Obligations**

Despite Mosbarger's voluntary abandonment of her franchise rights, Mosbarger has refused to comply with the post-termination obligations she accepted. Instead, Mosbarger has ignored her contractual agreement to refrain from competing with Curves and opened an independent fitness and weight loss facility named "Jordan's Gym." (Certification of Julie Ferrell ("Ferrell Cert."), ¶ 4, attached hereto at Tab 2). Mosbarger is currently operating her competitive business within the same territory formerly granted her as a franchisee. (*Id.*). That business offers to the public the same types of fitness and weight loss services and products that

5

Mosbarger formerly offered as a licensed CURVES® franchisee. (*Id.*). In fact, Mosbarger continues to use the same fitness equipment she used as a CURVES® franchisee and continues to make use of Curves' proprietary business information and trade secrets to operate her independent business. (*Id.*). Mosbarger has refused to return the confidential and proprietary manuals and other information about the CURVES® business system that she received as a franchisee, and is instead using that information to compete unlawfully against Curves. (Ayers Cert., ¶ 12).

Mosbarger's continued operation of a business that competes directly with Curves and its other franchisees in the very territory that she formerly served as a CURVES® franchisee is in direct violation of the covenant against competition she voluntarily accepted. That covenant formed part of the consideration given to Curves in exchange for Mosbarger's franchise rights. As Mosbarger herself previously acknowledged through the Franchise Agreement, her continued operation of a competitive business threatens irreparable harm to Curves and its franchise system. Mosbarger's independent business is impermissibly trading off the customer goodwill associated with Curves and its franchise system, thus wrongfully converting Curves' customers into customers of Mosbarger's independent business. Curves is entitled to issuance of a preliminary injunction to restrain Mosbarger from further violations of the Franchise Agreement.

## III. ARGUMENT

This Court may grant preliminary injunctive relief upon a showing of:

1. A substantial likelihood of success on the merits of Plaintiff's claim;

2. The threat of irreparable harm should the preliminary injunction be denied;

3. The threatened harm to the movant outweighs the threatened harm that the injunction may cause; and

6

4.    Granting injunctive relief is not adverse to the public interest.

*Digitel Corp. v. Deltacom, Inc.*, 953 F. Supp. 1486, 1495 (M.D. Ala. 1996). Applying this standard to the instant case, Curves is entitled to the relief it seeks from this Court.

## A.    CURVES IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

### 1.    Covenant not to Compete

Through this motion, Curves seeks to enforce Mosbarger's post-termination obligations under the Franchise Agreement. Most significantly, Curves seeks to enforce the covenant against competition that Mosbarger accepted when she became a franchisee. The restrictive covenant at issue is reasonable as a matter of law, and must be enforced.[1]

Under the law of either Alabama or Texas, a covenant against competition will be enforced if reasonable. More than twenty years ago, the Alabama Supreme Court declared restrictive covenants to be enforceable in the franchise context. *See Gafnea v. Pasquale Food Co., Inc.*, 454 So.2d 1366 (Ala. 1984). The *Gafnea* court explained that a covenant against competition in a franchise agreement represents only a partial restraint of trade, which is enforceable under Alabama law despite the provisions of Alabama Code §8-1-1. *See id.* at 1369 ("[W]e agree with the trial court that the covenant not to compete is only a partial restraint of trade and thus § 8-1-1 does not operate to void the covenant"). Under Alabama law, a restrictive covenant that is not void under the statute will be enforced if (1) the party seeking enforcement demonstrates a protectable interest, (2) the restriction is reasonably related to that interest, (3) the scope of the restriction is reasonable, and (4) the restriction does not impose an undue hardship on the other party. *Benchmark Medical Holdings, Inc. v. Barnes*, 328 F. Supp. 2d 1236, 1257

---

[1] Article 14(N) of the Franchise Agreement provides that disputes arising out of or relating to the parties' Agreement must be decided under Texas law. Curves does not believe that any substantive difference exists between the laws of Texas and Alabama with respect to the enforcement of covenants against competition contained in franchise agreements. For that reason, and for the Court's convenience, Curves will provide citation to the law of both Texas and Alabama in this brief.

(M.D. Ala. 2004). Texas law is no different. *See Amerispec, Inc. v. Metro Inspection Service, Inc.*, 2001 WL 770999, at *5 (N.D. Tex. July 3, 2001) (quoting Tex. Bus. & Com. Code § 15.50(a) (West 2000) ("a covenant not to compete is enforceable . . . to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee")); *Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 123 (5th Cir. 1993) (covenant not to compete must be ancillary to an otherwise enforceable agreement); *In re Printronics, Inc.*, 189 B.R. 995, 1002 (N.D. Fla. 2005) (applying Texas law and holding that "a covenant not to compete within a franchise agreement is presumed valid unless a franchisee proves that the covenant is unreasonable"). Applying either state's law, the restrictive covenant accepted by Defendant must be enforced.

### a. The restrictive covenant must be enforced to protect Curves' legitimate business interests

Curves has at least three legitimate business interests to be protected through enforcement of the Franchise Agreement's covenant against competition. First, and most importantly, Curves has an interest in preventing Mosbarger from wrongfully appropriating the customer goodwill associated with the CURVES® trademarks within the territory formerly served by her CURVES® franchise. (Ayers Cert., ¶¶ 13-18). Courts in both Alabama and Texas have recognized that covenants against competition are necessary to protect a franchisor's customer goodwill from competition by a former franchisee. *See Gafnea*, 454 So.2d at 1369 ("The Gafneas have gained experience and built a clientele using the Pasquale reputation and the benefits of their franchise with Pasquale. Pasquale must be able to protect its franchise system by the minimal restrictions designed to prevent franchisees from taking unfair advantage of the benefits Pasquale provides"); *AmeriSpec*, 2001 WL 770999 at *4 ("AmeriSpec has demonstrated

that its trademark has developed goodwill. It is entitled to protect that goodwill by preventing a former franchisee who operated under its trademark for ten years from competing against it. The law recognizes as a legitimate business interest the right to protect the goodwill associated with a trademark").

Goodwill is, of course, "the value that results from the probability that old customers will continue to trade with an established concern." *Domino's Pizza, Inc. v. El-Tan, Inc.,* Bus. Franchise Guide (CCH) ¶ 10,676, at 23,723 (N.D. Okla. Apr. 28, 1995). The goodwill generated by the operation of a franchised location belongs to the franchisor, not the franchisee. As observed by the court in *Giampapa v. Carvel Corp.*, Bus. Franchise Guide (CCH) ¶ 11,442, at 30,816, 30,817 (D.N.J. June 18, 1998), after noting that many courts have found that "customer goodwill developed by the seller or franchisor" is a protectable interest, the franchisor "has a legitimate interest in protecting the goodwill developed" at a particular location. As stated in *Liberty Sales Assoc., Inc. v. Dow Corning Corp.,* 816 F. Supp. 1004, 1010 (D.N.J. 1993), the franchise relationship "is one in which the franchisee wraps himself with the trade name of the franchisor and relies on the franchisor's goodwill to induce the public to buy." According to *Scott v. Snelling and Snelling, Inc.,* 732 F. Supp. 1034, 1041 (N.D. Cal. 1990), "since the opportunity to utilize the goodwill by the franchisee is revocable, it is more like a lease than a sale of the goodwill; and the franchisor agrees that the franchisee may benefit from the goodwill for a specified period of time, and for a specified price."

When a franchise agreement is terminated, the customer goodwill developed at the franchised location reverts to the franchisor as the trademark holder. *See Jiffy Lube Int'l., Inc. v. Weiss Brothers, Inc.,* 834 F. Supp. 683, 691 (D. N.J. 1993) ("One can view a franchise agreement, in part, as a conveyance of the franchisor's good will to the franchisee for the length

9

of the franchise. When the franchise terminates, the good will is, metaphysically, reconveyed to the franchisor. A restrictive covenant, reasonably crafted, is necessary to protect the good will after that reconveyance"). The covenant not to compete is thus vital to protect Curves' considerable goodwill and hard-won reputation. *Dunkin' Donuts v. Shivem, Inc.*, Bus. Franchise Guide (CCH) ¶10,681 ("Without a preliminary injunction to restrain Defendant from operating a competing doughnut shop either in the exact location which was formerly a Dunkin' Donuts shop or in that general vicinity, plaintiff will clearly suffer harm to its goodwill"); *Shakey's Inc. v. Martin*, 430 P.2d 504, 509 (Idaho 1967).

Here, Mosbarger's fitness and weight loss facility developed substantial customer goodwill during the more than seven years that it operated as a CURVES® facility. While Mosbarger has moved the physical location of that facility, her independent business continues to operate in the same territory in which Curves developed its customer goodwill. That goodwill belongs not to Mosbarger, but to Curves, whose Marks generated it. Now that Defendant has voluntarily abandoned her franchise rights, she cannot be permitted to continue to trade off the customer goodwill developed through her long association with Curves by operating a competing business within the very territory she formerly served as a franchisee. As numerous courts have recognized, Curves is entitled to an injunction to restrain any further infringement of its customer goodwill.

Second, Curves also has a legitimate business interest in protecting itself from unfair competition by a former franchisee. (Ayers Cert., ¶¶ 13-18). During her tenure as a CURVES® franchisee, Defendant learned much about how to operate a weight loss and fitness business. It would be unfair to permit Defendant to now take the knowledge gained from her association with Curves and use that knowledge to compete with Curves and its other franchisees within the

same territory. *See Economou v. Physicians Weight Loss Centers of America*, 756 F. Supp. 1024, 1032 (N.D. Ohio 1991) ("the franchisee has gained knowledge and experience from the franchisor, and to allow the franchisee to use this knowledge and experience to serve former or potential customers of the franchisor would work a hardship and prejudice to the latter"). Defendant's competition is made even more damaging by her refusal to return the operations manual and other confidential CURVES® information she received as a franchisee.

The existence of a former franchisee turned competitor will also make it difficult for Curves to re-franchise this area. The courts and commentators have observed, repeatedly, that the continued operation of a business by a former franchisee within the same territory, even if under a different name, makes it virtually impossible for the franchisor to refranchise the area. That concern was expressed by the court in *Domino's Pizza, Inc. v. El-Tan, Inc.*, 1995 WL 367893 at *3 (N.D. Okla. Apr. 28, 1995), when it found that "without injunctive relief, Domino's would suffer irreparable harm due to its inability to attract new franchisees to the area now serviced by" the former franchisee. *See also Servicemaster Residential/Commercial Services, L.P. v. Westchester Cleaning Services, Inc.*, Bus. Franchise Guide (CCH) ¶ 12,073 (S.D.N.Y. 2001) (covenant protects franchisor's "interest in re-franchising the market"); *DAR & Associates, Inc. v. Uniforce Services, Inc.*, 37 F. Supp. 2d 192 (E.D.N.Y. 1999) (refusal to enforce covenant "would impede franchisor's ability to secure another franchise in territory"); *Carvel Corp. v. Eisenberg*, 692 F. Supp. 182, 186 (S.D.N.Y. 1988) (covenant protects franchisor's "ability to install another franchise in the same territory"); *Shakey's*, 430 P.2d at 509 ("the continued operation by Boise Pizza Corporation of a pizza restaurant and parlor on the premises previously franchised has affected the ability of appellant to secure another franchisee in the territory").

Here, a potential franchisee would certainly be concerned by the existence of a former franchisee operating within the same area, especially as that former franchisee has knowledge of Curves' marketing plans, the costs of operating a CURVES® franchise, and the business strategy to be employed by the new franchisee. Curves' interest in re-franchising provides further support for enforcement of Defendant's restrictive covenant. *See Jiffy Lube*, 834 F. Supp. at 691 ("Jiffy Lube not only has a valid interest in protecting the good will it has developed over the years by having its franchisees do business at the Turnersville location, but it also has an interest in being able to place a new franchisee at or near the same location where this good will has been created").

Finally, Curves has a legitimate interest in preserving the integrity of its franchise system. (Ayers Cert., ¶¶ 13-18). A post-term noncompete agreement helps prevent a franchise system from unraveling. As one commentator has noted:

> If a franchisee is part of a business format franchise system where the glue is the trademark and the system itself, it will take notice of a franchisor's ability to protect that system again defections that go unchecked. If other franchisees can ignore their post-termination obligations, then the argument is, "why can't I?" Without the ability to enforce the post-termination obligations contained in a contract or provided by law, a franchisor risks a general unraveling of its franchise system.

T. Pearce, L. King, J. Tharrington, *The Enforcement of Post-Termination Remedies in the Franchise Contract*, 24 OKLA. CITY U.L. REV. 81, 82 (1999). The court, in *Rita's Water Ice Franchise Corp. v. DBI Investment Corp.*, 1996 WL 165518 at *5 (E.D. Pa. 1996), made the same observation when it said that "if [the franchisor] is unable to enforce this restrictive covenant against these [franchisees], the value of its franchises are lower. Other franchisees might violate their franchise agreements in similar ways and use Rita's goodwill to establish competing businesses."

Defendant is not the only franchisee to have executed a license agreement containing a covenant against competition. Instead, such covenants are the norm in Curves' Franchise Agreements. Were Defendant permitted to continue operating a competing business after termination in the exact same territory served by her formerly licensed business, other franchisees could be inspired to do the same. If the only penalty associated with a breach of the Franchise Agreement were the requirement that Curves' trademarks be removed, Curves could face other defections by franchisees who decide they could operate an independent fitness and weight loss facility. The loss of numerous franchisees, who would then become well-trained competitors of Curves and its remaining franchisees, would seriously harm the entire franchise system.

**b.      The scope of the restriction is reasonable**

The scope of the restrictive covenant that Curves seeks to enforce is reasonable under both Alabama and Texas law. Curves seeks to prevent Defendant from operating a competing business within forty miles of the territory in which she formerly operated her franchised business, and then only for the period of three years. Mosbarger was granted the right to operate her franchise in the city of Deatsville, Alabama. (Complaint, Ex. A). To prevent Mosbarger from wrongfully competing with a new CURVES® franchisee, Curves must be able to now exclude Mosbarger from drawing customers from her former large territory. Because Mosbarger's territory was itself large, Curves requires that Mosbarger not establish a competing facility within forty miles of her former territory. That restriction is necessary to give a new franchisee a fair opportunity to establish its own customer base in Deatsville and its surrounding areas, free from Defendant's unfair competition. (Ayers Cert., ¶ 16).

Similarly, the three-year noncompetition period is equally reasonable. Mosbarger operated her franchised business for more than seven years. Because of her long association with the CURVES® brand and business system in the Deatsville area, Mosbarger has gained the benefit of a substantial amount of customer goodwill in the community. A three-year period of freedom from competition is necessary to dispel the lingering goodwill that the CURVES® Marks and business system generated for Mosbarger's business. (Ayers Cert., ¶ 15).

The scope of the covenant at issue in this case is consistent with Alabama law. *See Benchmark Medical Holdings*, 328 F. Supp. 2d at 1267 (enforcing five-year restrictive covenant); *Digitel Corp.*, 953 F. Supp. at 1496 (finding restriction within three state area to be reasonable); *Booth v. WPMI Television Co., Inc.*, 533 So.2d 209, 211 (Ala. 1988) (enforcing sixty-mile restriction); *Tyler v. Eufaula Tribune Publishing Co., Inc.*, 500 So.2d 1005, 1007 (Ala. 1986) (fifty-mile restriction found reasonable). Texas courts have also enforced similar restrictions. *See e.g., Meineke Discount Muffler*, 999 F.2d at 126-27 (twenty-mile restriction reasonable); *Isuani v. Mankske-Sheffield Radiology Group*, 805 S.W.2d 602, 606 (Tex. Ct. App. 1991) (fifteen-mile limitation reasonable); *H.H. Chandler v. Mastercraft Dental Corp. of Texas Inc.*, 739 S.W.2d 460 (Tex. Ct. App. 1987) (five-year covenant against competition found enforceable).

### c.    **Mosbarger will not suffer undue hardship if the covenant is enforced**

Through this motion, Curves does not seek to prevent Mosbarger from competing against it in any form. To the contrary, Curves seeks only to enforce the narrow restrictions Mosbarger voluntarily accepted when she became a franchisee. Provided Mosbarger relocates her business outside the area encompassed by her restrictive covenant, Mosbarger may continue to operate a weight loss and fitness facility that competes with Curves and its franchisees. Alternatively,

14

Mosbarger may simply wait until her covenant against competition expires and then resume competing with Curves in any area she desires. Mosbarger will not suffer any more hardship than any other party forced to abide by the terms of a covenant against competition.

### d.    Post-Termination Obligations

Curves is also likely to succeed on the merits of its claim that Mosbarger must return Curves' operations manual and other confidential business information. Mosbarger plainly agreed through the Franchise Agreement that Curves' business information belong solely to Curves, and that Mosbarger would return such information upon the termination or expiration of her franchise rights. Now that Mosbarger has voluntarily abandoned her franchise, no justification exists for her retention of that confidential material.

### 2.    Trademark Infringement

Curves is also likely to succeed on the merits of its claim that Mosbarger's continued use of the telephone number she formerly advertised and used in connection with her CURVES® facility constitutes unlawful trademark infringement. To prevail in an action for trademark infringement under the Lanham Act, Curves must show: (1) Curves' mark is valid, and (2) the defendant's use of the contested mark is likely to cause confusion. *Dieter v. B & H Industries of Southwest Florida*, 880 F.2d 322, 326 (11th Cir. 1989). There can be no dispute that Mosbarger's continued use of a telephone number advertised under the CURVES® Marks is likely to cause customer confusion. "It is hornbook law that once a license contract is terminated there is no doubt that the ex-licensee has no authorization or consent to continue use of that mark. After the license has ended, the ex-licensee must stop use of the mark." *Burger King Corp. v. Agad*, 911 F.Supp. 1499, 1503 (S.D. Fla. 1995). Once a license to make use of a trademark has expired, the

continued use of the formerly licensed trademark constitutes infringement. *Id.* The Eleventh

Circuit has clearly explained why such continued use by a former licensee cannot be permitted:

> [c]ommon sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisors' trademarks. A patron of a restaurant adorned with the Burger King trademarks undoubtedly would believe that BKC endorses the operation of the restaurant. Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated.    Any shortcomings of the franchise therefore would be attributed to BKC. *Because of this risk, many courts have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement.*

*Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983) (emphasis added).

Continued use of a licensor's trademark by a terminated licensee necessarily creates a risk of

customer confusion:

> Former licensees pose a particularly troublesome source of confusion in this regard:  a licensee who once had authorization becomes associated in the public mind with the licensor, yet the licensor no longer controls and assures the quality of the licensee's product....To protect consumers as well as the licensor's property interest, the Eleventh Circuit holds that a former licensee cannot mislead the public into believing that its affiliation continues once the licensing arrangement has ceased.  For once the contract ends a licensee's right to the mark ends, and any subsequent use constitutes infringement.

*American Farm Bureau Federation v. Alabama Farmers Federation*, 935 F. Supp. 1533, 1546-

47 (M.D. Ala. 1996) (quoting *Professional Golfers Ass'n. of Am. v. Bankers Life & Casualty

Co.,* 514 F.2d 665, 670 (5th Cir. 1975)).

Many other courts have expressed this same view.  *See, e.g. Gorenstein Enterprises, Inc.

v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989) ("If the owner of the mark has

broken off business relations with a licensee he cannot ensure the continued quality of the

(ex)licensee's operation, whose continued use of the trademark is therefore a violation of

trademark law); *Church of Scientology Intern. v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986) ("use of a mark by a former licensee confuses and defrauds the public"); *U. S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 143 (3d Cir. 1981) ("once a license has expired, use of the formerly licensed trademark constitutes infringement"); and *Professional Golfers Ass'n.*, 514 F.2d at 670 ("once the contract ends, a licensee's right to the mark ends, and any subsequent use constitutes infringement"). The law simply does not permit Mosbarger to continue using a telephone number advertised under the CURVES® Marks.

## B.    CURVES SUFFERS IRREPARABLE HARM FROM DEFENDANT'S BREACH OF HER POST-TERMINATION OBLIGATIONS

Curves suffers irreparable harm each day that Defendant operates her fitness center in violation of the post-termination obligations set forth in the Franchise Agreement. As discussed above, Curves has developed substantial customer goodwill in the territory formerly served by Mosbarger, due to Mosbarger's display of Curves' Marks and use of its business system. Curves suffers irreparable harm to that customer goodwill each day that Mosbarger continues to operate her competing facility, thus wrongfully converting Curves' customers into Mosbarger's own customers. The loss of customer goodwill constitutes irreparable harm for which no adequate remedy at law exists. *See Digitel Corp.*, 953 F. Supp. at 1498 ("The former Fifth Circuit held that the loss of customers and goodwill is an irreparable injury. The court agrees that such an injury would be impossible to calculate monetarily and that Digitel is vulnerable to irreparable harm"); *AmeriSpec*, 2001 WL 770999 at *6 ("In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury"). In fact, Mosbarger acknowledged through the Franchise Agreement that Curves would suffer irreparable harm were she to breach the post-termination covenant against competition she accepted. (Complaint, Ex. A., Article 9(C)).

17

Courts across the country have agreed that the need to protect a party's interest in its

customer goodwill is a compelling reason for granting preliminary injunctive relief:

> [T]he purpose of the covenants is to protect against loss of control of reputation,
> loss of goodwill, and consumer confusion. In general, the courts have held these
> are sufficient grounds for a finding of irreparable injury.

*Economou,* 756 F. Supp. at 1039. For that reason, courts throughout the United States have

enforced post-termination noncompete provisions in franchise arguments to prevent irreparable

harm to a franchisor's goodwill.[2]

Curves also suffers irreparable harm to the operation of its franchise system. The entire

franchise system suffers when an ex-franchisee refuses to play by the rules. Curves has invested

substantial time and effort in the development of its franchise Business System. Curves seeks to

protect that investment by preventing ex-franchisees from diverting customers, contacts and

goodwill developed under the CURVES® name to their independent fitness and weight loss

businesses. Defendant's conduct jeopardizes Curves' ability to continue doing business in the

relevant territory. (Ayres Cert., ¶ 17). Curves' established franchise system is a substantial

---

[2] *See, e.g., ServiceMaster Residential/Commercial Services, L.P. v. Hooker,* Bus. Franchise Guide (CCH) ¶ 13,457 (W.D. Tenn. 2006); *Piercing Pagoda v. Hoffner,* 351 A.2d 207, 210 (Pa. 1976) (upholding post-termination covenant); *Rita's Water Ice Franchise Corp. v. DBI Investment Corp.,* Bus. Franch. Guide (CCH) ¶10,918 (E.D. Pa. 1996) (terminated franchisee enjoined from competing pursuant to terms of franchise agreement); *Sparks Tune Up Centers, Inc. v. Gary White,* Bus. Franch. Guide (CCH) ¶10,941 (E.D. Pa. 1989) (noncompetition agreement prohibiting terminated franchisee from operating an automobile tune up center or similar business within ten miles of its former franchise location for one year after termination was reasonable and enforceable); *Specialty Bakeries, Inc. v. City Bagels, Inc.,* Bus. Franch. Guide (CCH) ¶10,648 (E.D. Pa. 1995) (terminated franchisee was enjoined from continuing to operate independent jobs at its former franchise location pursuant to noncompete provision in franchise agreement); *McDonald's System, Inc. v. Sandy's Inc.,* 45 Ill. App. 2d 57, 195 N.E.2d 22 (1963) (upholding in-term covenant); *Diet Center, Inc. v. Virginia Mary Day,* Bus. Franch. Guide (CCH) ¶9651 (D. Mass. 1990) (weight loss franchisor granted preliminary injunction enforcing 30-mile noncompetition agreement against former franchisee); *Dominos Pizza, Inc. v. El-Tan, Inc.,* Bus. Franch. Guide (CCH) ¶10,676 (N.D. Okla. 1995) (terminated franchisee enjoined from competing for one year within ten mile radius of former franchise location pursuant to terms of franchise agreement); *Total Car Franchising Corp. v. L & S Paint Works, Inc.,* 981 F. Supp. 1079 (M.D. Tenn. 1997) (franchisor granted preliminary injunction enjoining terminated vehicle paint restoration franchisee for violating the noncompetition provisions of its franchise agreement); *ATL Int'l, Inc. v. Baradar,* Bus. Franch. Guide (CCH) ¶11,345) (D. Ma. 1997) (automotive repair franchisor granted preliminary injunction enforcing two year post-termination noncompete provision in franchise agreement).

business interest that is protectable by enforcement of the noncompete provision. As one court

has recognized:

> [A franchisor] not only has a valid interest in protecting the goodwill it has
> developed over the years by having its franchisee do business at the [franchisee's]
> location, but it also has an interest in being able to place a new franchisee at or
> near the same location where their goodwill has been created.

*Jiffy Lube Intern. v. Weiss Bros.*, 834 F. Supp. 683, 690 (D.N.J. 1993). *See also In re Talmage*,

758 F.2d 162 (6th Cir. 1985) (one year noncompete in license agreement enforced to protect the

goodwill of licensor's business and confidentiality of information valuable to licensor's

business).

Recognizing the legitimate need for a franchisor to protect its name and franchise system,

courts throughout the United States have upheld post-term restrictive covenants in franchise

agreements. (*See* footnote 2, *supra*.) As these authorities demonstrate, the restrictions sought by

Curves are commonplace in the franchise context and are almost universally enforced by the

courts. If the court does not enforce the Franchise Agreement, other CURVES® franchisees

may believe they could learn the CURVES® Business System, build a business using the

CURVES® Marks, abandon that franchise, and immediately convert their franchised locations

into independent, competing businesses. As the court in *Economou* recognized, ". . . the survival

of the business itself" is at stake if a non-compete covenant is not enforced. *Economou*, 756 F.

Supp. at 1032. Other courts readily agree:

> If plaintiff is unable to enforce their restrictive covenant against these defendants,
> the value of all its franchises are lowered. Other franchisees might violate their
> franchise agreements in similar ways and use [Franchisor's] goodwill to establish
> competing businesses.

*Rita's Water Ice Franchise Corp.* at ¶28,140 (Appendix at Tab 7). In *ATL Int'l, Inc. v. Baradar*,

Bus. Franchise Guide (CCH) ¶ 11,345 (D. Md. 1997), the court recognized that risk:

19

I'm going to grant the injunction. I have no doubt that the [franchisor] would suffer irreparable harm if I were to deny the preliminary injunction. As the cases say, it is the franchise system itself that is at issue. I do not take it as a parade of horribles argument at all. I think it is very realistic to expect that if a franchisee simply were to stop paying fees or stop other things that were due and then, after having operated under the franchise name for several years, were simply to say okay, I'm breaking away, I'll stop using the various things that I have received as a franchisee and will go out on my own, that that would be a clear signal that other franchisees could do the same...I have little doubt that my failure to grant the injunction here might unravel the franchise system.

*Id.* at 30,333; *see also ServiceMaster Residential/ Commercial Services, L.P. v. Proctor,* Bus. Franchise Guide (CCH) ¶ 12,251 (D. Neb. 2001) ("If I do not grant the motion, the plaintiff's franchised business will be seriously harmed throughout the country and not merely for a year. Without an injunction, other franchise holders will see that they may reap the benefit of the franchise agreement, including use of the plaintiff's registered marks, goodwill and reputation, and, later at their election and with little or no cost, begin to compete with the plaintiff as if they had never signed a franchise agreement"). There is no reason why the outcome should be any different in this case.

Unless Curves can enforce the post-term noncompete agreement, the value of the Franchise Agreements are severely diminished, in that any franchisee could take the benefits and knowledge gained as a CURVES® franchisee and immediately use that knowledge to compete against Curves – without so much as having to change locations. If a disgruntled franchisee were permitted to simply walk away from a franchisor's system, "its licensing program w[ould] lose much of the confidence reposed in it by [its] licensees." *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642, 651 (6th Cir. 1982). This result is not only inequitable, but goes against the most basic principles of contract law. Moreover, the actual loss to the CURVES® franchise

system cannot be quantified by any means, thus constituting per se irreparable harm. *Merry Maids Ltd. Partnership v. Kamara*, 33 F. Supp. 2d 443, 446 (D. Md. 2000).

Defendant is not the only franchisee to have executed a Franchise Agreement containing a covenant against competition. Instead, such covenants are the norm in Curves' franchise agreements. (Ayres Cert., ¶ 17). Were Defendant permitted to continue operating a competing business after termination in the same territory as her formerly licensed business, other franchisees could be inspired to do the same. If the only penalty associated with a breach of the Franchise Agreement were the requirement that Curves' trademarks be removed, Curves could face other defections by franchisees who decide they could operate profitably an independent fitness center facility. The loss of numerous franchisees, who would then become well-trained competitors of Curves and its remaining franchisees, would seriously harm the entire franchise system.

Curves also suffers irreparable harm from Mosbarger's continuing use of the same telephone number. Damage to a trademark holder's reputation and goodwill can constitute irreparable injury for which the trademark holder has no adequate remedy at law. *See McDonald's*, 147 F.3d at 1310 (citing *Power Test Petroleum Distributors v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985) (irreparable harm exists in a trademark case when the moving party "shows that it will lose control over the reputation of its trademark pending trial"). In the Eleventh Circuit, "a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of substantial likelihood of prevailing on the merits and/or a substantial threat of irreparable harm." *E. Remy Martin & Co. v. Shaw-Ross Intern. Imports*, 756 F.2d 1525, 1530 (11th Cir. 1985).

Indeed, by its very nature, trademark infringement "results in irreparable harm to the owner of the mark . . . ." *Amoco Oil Co. v. Rainbow Snow, Inc.,* 809 F.2d 656, 663 (10th Cir. 1987) (citing *Processed Plastic Co. v. Warren Comm., Inc.*, 675 F.2d 852, 858 (7th Cir. 1982)). "When a plaintiff makes a *prima facie* showing of either trademark or copyright infringement, irreparable harm is ordinarily presumed." *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1218 (N.D. Ga. 1995); *see also Caterpillar, Inc. v. Nationwide Equipment,* 877 F. Supp. 611, 617 (M.D. Fla. 1994) ("In trademark infringement cases, irreparable harm is presumed"); *Church of Scientology*, 794 F.2d at 44 (2d Cir. 1986) ("a licensor that establishes infringing use and consumer confusion in a trademark suit brought against its former licensee has proved irreparable harm as a matter of law"). Thus, it is "well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Federal Rule of Civil Procedure 65." *Bellsouth Advertising & Publishing Corp.*, 792 F. Supp. 775, 784 (M.D. Fla. 1991). Through its demonstration of a likelihood of confusion, Curves has also proven irreparable harm relative to its Lanham Act claims.

## C.    <u>POTENTIAL HARM TO CURVES OUTWEIGHS ANY POTENTIAL HARDSHIP TO DEFENDANT</u>

"Courts are generally unsympathetic to franchisees who blatantly disregard covenants not to compete." *I Can't Believe It's Yogurt v. Gunn,* 1997 WL 599391 (D. Colo. 1997). The harm to Curves from Defendant's unfair competition outweighs any hardship Defendant may suffer from the grant of the requested injunction. In contrast to the irreparable harm suffered by Curves, any harm to Defendant is completely self-inflicted and thus cannot be deemed irreparable as a matter of law. *See, e.g., Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) (self-inflicted harm cannot be deemed "irreparable"). Mosbarger was aware of the restrictive covenant at the time she signed the Franchise Agreement. Despite

the inclusion of that covenant, Mosbarger accepted the benefits of the Franchise Agreement for more than seven years. Mosbarger then forced Curves to invoke the restrictive covenant by unilaterally abandoning her franchise and opening a new, competitive business within the same territory. Thus, in contrast to the irreparable harm to Curves' customer goodwill and franchise system described above, Defendant will suffer only self-inflicted harm from enforcement of her noncompetition obligation.

Moreover, any harm to be suffered by Mosbarger is also narrowly limited. Curves does not seek to completely prevent Mosbarger from competing against it. Instead, Curves seeks only to prevent Mosbarger from competing against Curves in the same territory in which she formerly used the CURVES® Marks and business system to establish and perpetuate her business, and then only for three years. Enforcing Mosbarger's noncompetition obligation will simultaneously protect Curves' legitimate business interests and also permit Mosbarger to continue operating her business. Where the defendant's breach is willful, and the covenant does not completely foreclose a defendant's opportunity to practice his trade, the balance of harms weighs in favor of enforcement. *See Sigma Chemical Co. v. Harris*, 586 F. Supp. 704, 711 (E.D. Mo. 1984). In any event:

> To the extent that the defendants suffer significant, and in essence irreparable, damage from the granting of the preliminary injunction, this harm is a predictable consequence of their willful breach of contract and their misconduct. As such, it is not the type of harm from which we seek to protect a defendant. While a court fashioning an equitable remedy should not impose hardship on a defendant which exceeds that required to protect a plaintiff's legitimate contractual interest, the often painful harm which follows a defendant who willfully breaches a contractual undertaking is not a basis for denying a plaintiff the relief to which it is legally entitled.

*Jiffy Lube*, 834 F. Supp. at 693.

The balance of harms also weighs in favor of Curves on its trademark infringement claim. At the time she signed the Franchise Agreement, Mosbarger knew that her only right to make use of the CURVES® Marks arose under the Franchise Agreement. Nevertheless, Mosbarger willfully breached that Agreement by abandoning her franchised business. Any harm Mosbarger suffers from an order enjoining her from further use of Curves' Marks is entirely self-inflicted. Where the harm to a former licensee or franchisee is self-inflicted, this factor weighs in favor of the trademark owner. *S & R. Corp.*, 968 F.2d at 379 ("In choosing to stop his own performance under the contract, [the franchisee] effectively terminated the franchise agreement. [The franchisee] is certainly harmed by the threat of loss of his franchise, but his self-inflicted harm is far outweighed by the immeasurable damage done Jiffy Lube by the infringement of its trademark"); *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800, 806 (3d Cir. 1998); *Opticians v. Independent Opticians of America*, 920 F.2d 187, 197 (3d Cir. 1990) (a party who wrongfully uses another's trademark and is then ordered to cease its wrongful use "can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself"); *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ("Defendants' self-inflicted harm is far outweighed by the immeasurable damage done BKC by the infringement of its Marks. Defendants simply have no equitable standing to complain of injury should their infringements be preliminarily enjoined"). The balance of harms weighs in favor of Curves.

**D.    THE PUBLIC INTEREST IS SERVED BY ENFORCING DEFENDANT'S CONTRACTUAL OBLIGATIONS**

Finally, the public interest weighs in favor of Curves' request for injunctive relief. "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Pappan*, 143 F.3d at 807

(quotations omitted).  Where, as here, the infringer is a former franchisee who continues to use trademarks that it previously was licensed to use, the danger is the greatest.  Perhaps the best articulation of the public interest in this type of case was presented by the Court in *Burger King Corp. v. Hall*, 770 F. Supp. 633, 640 (S.D. Fla. 1991):

> In a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount.  Indeed, when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his product's reputation.  (Citation omitted).  *The public interest can only be served by the immediate interdiction of [the former franchisee's] use of the [franchisor's] Marks.*  Consumers who rely upon the [franchisor's] Marks in patronizing [the former franchisee's] restaurant are being deceived into purchasing products under the mistaken belief that [the former franchisee] is operating a genuine Burger King® restaurant, backed by the [franchisor] as its sponsor, and subject to the [franchisor's] stringent quality and service controls.

The public also has an interest in enforcement of restrictive covenants that protect legitimate business interests.  *See AmeriSpec*, 2001 WL 770999 at *6 ("It is in the public interest to uphold contracts and to enforce a remedy to which the parties have expressly agreed"); *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 848 (E.D. Mich. 1994) (citing the public's interest in "enforcing valid employment contracts" as weighing in favor of granting of injunction); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer*, 816 F. Supp. 1242, 1248 (N.D. Ohio 1992) (concluding that there is an "overriding public interest is the honoring and enforcement of noncompete agreements"); *Shipley, Inc. v. Colby*, 926 F. Supp. 28, 30 (D. Mass. 1996) ("It is in society's best interest to recognize and enforce [non-competition] agreements which were voluntarily entered into and accepted.").  One of the interests served by enforcing reasonable covenants not to compete is the prevention of consumer confusion.  *Merry Maids*, 33 F. Supp. 2d at 446.  Such confusion is particularly likely here where Defendant continues to operate a fitness center business in the very territory of her former CURVES® franchise, using

Curves' equipment and other materials. The public interest certainly will not be offended by issuance of an injunction against Mosbarger.

## IV.  CONCLUSION

The requisite elements for issuance of an injunction are more than satisfied here. Curves has been and continues to be irreparably injured by Defendant's conduct. Curves is likely to succeed on the merits, which, when coupled with the hardships facing it, militate in favor of an injunction. Furthermore, Curves does not have an adequate remedy at law. Accordingly, Curves respectfully requests that its motion for preliminary injunction be granted.

Dated:  September 7, 2007

Respectfully Submitted,

GRAY, PLANT, MOOTY, MOOTY &
BENNETT, P.A.
Michael R. Gray (175602)
Jason J. Stover (30573X)
500 IDS Center, 80 South Eighth Street
Minneapolis, Minnesota  55402
Telephone:  (612) 632-3000
Facsimile: (612) 632-4444
mike.gray@gpmlaw.com
jason.stover@gpmlaw.com

Of Counsel

William D. Jones III  (asb-3120-e57w)
Joseph W. Carlisle  (asb-1197-e68c)
JOHNSTON BARTON PROCTOR & ROSE LLP
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, Alabama  35209
Phone: (205) 458-9400
Fax:    (205) 458-9500
wdj@johnstonbarton.com
jwc@johnstonbarton.com

**Attorneys for Plaintiff**

26

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed the above and foregoing *Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction* with the Clerk of the Court, and served via hand-delivery and U.S. Mail, with proper postage affixed, a true and correct copy of the foregoing on the Defendant at the following address:

Linda S. Mosberger
750 Shields Road
Deatsville, AL 36022

this 7th day of September, 2007.

Of Counsel

GP:2257480 v1/W0615827.DOC

27

# Exhibit 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Curves International, Inc.,<br><br>                Plaintiff,<br><br>vs.<br><br>Linda S. Mosbarger,<br><br>                Defendant | Case Action No. _____ |

## <u>CERTIFICATION OF KEVIN D. AYERS</u>

      1.      My name is Kevin D. Ayers. I am a citizen and resident of the State of Texas, and I make this Certification based on personal knowledge in support of Plaintiff's Memorandum in Support of Its Motion for a Preliminary Injunction.

      2.      I am the General Counsel for Curves International, Inc. ("Curves"). I have held that position for approximately ten years. In my capacity as General Counsel, I am familiar with the Curves Business System, training programs, and marketing and development activities, among other things. As General Counsel, I am the custodian of and have access to executed copies of all Curves franchise agreements, leases, correspondence, and other related documents and records concerning each Curves franchise. This includes the documents and records relating to the franchise owned by Defendant in this case. The documents referenced herein are kept in the course of Curves' regularly conducted business activities, and it is Curves' normal practice to make and keep these documents. My job responsibilities include overseeing litigation brought by or against franchisees. I am also familiar with the business of Curves generally, including having knowledge regarding its operational standards, the resources it has dedicated

toward its intellectual property, and the relationship between franchisees' operations and the goodwill associated with Curves' Marks.

3.      Curves is a Texas corporation with its principal place of business at 100 Ritchie Road, Waco, Texas. It has developed a business system for the sale of 30-minute fitness and weight loss services to the public (the "Business System"), all associated with CURVES® trademarks, trade names and related marks (the "Marks"). Curves licenses franchisees to use its Business System and registered trademarks pursuant to the terms of a written franchise agreement. Those franchise agreements require franchisees to operate their CURVES® businesses in accordance with Curves' standardized and uniform policies and procedures.

4.      Curves has invested substantial time, money and other resources in developing its unique Business System and in the development and protection of its trademarks and trade names.

5.      Curves' Marks have been very widely advertised and promoted by Curves over the years. Curves and its franchisees have expended millions of dollars in advertising and promoting the CURVES® Marks over the last decade.

6.      Curves and its franchisees currently operate approximately 10,000 facilities worldwide.

7.      As a result of the extensive sales, advertising, and promotion of services and products identified by the CURVES® Marks, the public has come to know and recognize the CURVES® Marks, and to associate them exclusively with services and products offered by Curves and its franchisees. The CURVES® Marks are among the best and most widely known trademarks in the United States and throughout the world, and are assets of inestimable value to Curves, representing and embodying Curves' considerable goodwill and favorable reputation.

8.      On or about April 5, 1999, Curves entered into a franchise agreement with Defendant Linda Mosbarger (the "Franchise Agreement"), whereby Defendant received the license and right to operate one CURVES® franchise using the CURVES® trademarks and Business System in an area defined by the Franchise Agreement as encompassing Deatsville, Alabama.

9.      Pursuant to the terms of the Franchise Agreement, Defendant was granted the right to participate in the CURVES® franchise system and display the CURVES® Marks in connection with her business.

10.     As it does with all its franchisees, Curves provided Defendant with Curves' confidential and proprietary business information. Curves also provided training to Defendant concerning various aspects of her business, and provided Defendant with information about how best to operate her franchised business. Through her participation in the CURVES® franchise system, Defendant gained extensive knowledge about the Business System and learned how to operate a fitness and weight loss business according to the Business System.

11.     Defendant breached the Franchise Agreement by abandoning her franchised facility without Curves' consent. In October 2006, Mosbarger informed Curves that she had closed her franchised location and did not plan to re-open it. Accordingly, by letter dated November 16, 2006, Curves advised Mosbarger that her abandonment had led Curves to terminate her franchise rights, effective immediately.

12.     After the termination of her franchise rights, Mosbarger opened a competing fitness and weight loss facility named "Jordan's Gym." That facility provides products and services similar to those offered for sale in licensed CURVES® facilities, and is being operated in direct contravention of the post-termination covenant against competition that Mosbarger

3

accepted through her Franchise Agreement. Mosbarger has not returned Curves' operations manual and other confidential business information, but instead continues to use that information to compete against Curves and its franchisees.

13.    Curves, its national franchise system, and its franchisees in Alabama and surrounding areas will be irreparably harmed in the absence of injunctive relief, as set forth below.

14.    Curves must be able to enforce the post-termination non-compete provisions of the Franchise Agreement, which prevents Defendant from operating a competing fitness or weight loss business for a period of three years, within a radius of 40 miles of Defendant's former CURVES® facility.

15.    The integrity of Curves' franchise system requires that Defendant not be allowed to operate a competing business in direct competition with authorized CURVES® franchisees for a period of three years after termination. The non-compete period is reasonably necessary to protect Curves' legitimate business interests, its goodwill in the market and its relationships with other franchisees and customers in Alabama. A three-year restriction is necessary to prevent Defendant from taking the confidential business information she has gained as a franchisee and using it to compete with Curves and its other franchisees. After the expiration of the three-year period, Defendant will no longer possess an unfair advantage against Curves and its franchisees. Three years from now, Defendant will no longer possess Curves' most current business information and will be sufficiently removed from the information she gained as a franchisee to once again permit her to compete fairly with Curves.

16.    Moreover, the geographic scope of the restrictive covenant is reasonable. Curves is entitled to prevent Defendant from capitalizing impermissibly on the customer goodwill

4

associated with Defendant's facility location through its previous display of the CURVES®
Marks. Defendant's former territory encompassed the entire city of Deatsville, Alabama.
Defendant drew customers from that entire region to her business by widely advertising her
facility as a CURVES® facility. If Defendant is enjoined from competing within forty miles of
her previous franchise, she will not be able to benefit from that customer goodwill, which
belongs to Curves. Curves and its other franchisees are entitled to be free from competition with
Defendant, who recently departed from the CURVES® system. Through her participation in the
CURVES® franchise system, Defendant learned much about Curves' confidential and
proprietary Business System. As a former franchisee, Defendant is in a unique position to
compete unfairly against Curves' other franchisees. The time and geographic restrictions
contained in the restrictive covenant are necessary to prevent Defendant from engaging in such
unfair competition.

17.      Curves will also be irreparably harmed if Defendant is permitted to disregard her
covenant against competition. By continuing to operate a competing facility in the same
territory in which her former CURVES® facility was located, Defendant is purposely trading off
the customer goodwill associated with the CURVES® Marks in this market. In effect,
Defendant is converting CURVES® customers into her own customers by using her former
association with Curves to retain the customers she formerly served as a franchisee. That harm
is exacerbated by Curves' difficulty in competing with Defendant due to her status as a former
franchisee. Curves' efforts to place a new franchisee in this territory will be made more difficult
by Mosbarger's continued presence in this market, as a prospective franchisee will likely be
concerned by the presence of a former franchisee operating a competitive business. Because
Mosbarger has had access to Curves' proprietary business information for more than seven

years, she represents a formidable competitor for any new franchisee. Finally, Mosbarger's continued operation creates a risk that other franchisees could be inspired to act in a similar manner. Restrictive covenants such as the one accepted by Defendant are the norm in Curves' franchise agreements. If Defendant is permitted to simply abandon her CURVES® business and open a competitive business at the same location, other franchisees could be inspired to do the same. This would have a devastating impact on the entire CURVES® franchise system and on franchisees who have honored their obligations to Curves. To preserve the integrity of its franchise system, Curves is entitled to enforcement of Defendant's contractual obligations.

18.     The time and geographic restrictions contained in the Franchise Agreement represent the minimum restrictions necessary to protect Curves' legitimate business interests in preserving its customer goodwill, avoiding unfair competition, and preserving the integrity of its franchise system. Curves will suffer irreparable harm to each of its three legitimate business interests if Defendant's covenants are not enforced.

19.     Attached as Exhibit A to the Complaint Curves has filed in this matter is a true and correct copy of the Franchise Agreement between Curves and Mosbarger, dated April 5, 1999.

20.     Attached as Exhibit B to the Complaint is a true and correct copy of a letter Curves sent to Mosbarger, dated November 16, 2006.

I certify under penalty of perjury that the foregoing is true and correct. Executed on this 6 th day of September 2007.

Kevin D. Ayers
General Counsel

GP:2237172 v1

6

Exhibit 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Curves International, Inc.,

                    Plaintiff,                          Case Action No. _____

vs.

Linda S. Mosbarger,

                    Defendant

## CERTIFICATION OF JULIE FERRELL

1.      My name is Julie Ferrell.  I am a citizen and resident of the State of Alabama, and I make this Certification based on personal knowledge and in support of Plaintiff's Memorandum in Support of Its Motion for a Preliminary Injunction.

2.      I am employed as an Area Director by Plaintiff Curves International, Inc. ("Curves").

3.      My duties as an Area Director include conducting routine inspections of Curves facilities in my geographic area of responsibility to determine, among other things, whether franchisees are complying with the terms of their Franchise Agreements.  My territory includes Deatsville, Alabama, where Defendant formerly operated a CURVES® franchise.

4.      On August 27, 2007, I visited Defendant's facility.  That facility was operating as a non-Curves fitness center called "Jordan's Gym."  Defendant's facility continued to use CURVES® equipment and was operated in accordance with the CURVES® business system.  I took photographs of the facility's exterior and of the equipment used inside the facility, true and correct copies of which are attached hereto as Exhibit A.  Defendant's current "Jordan's Gym"

facility is located within the same territory where she formerly operated a licensed CURVES® franchise.

5.    There are more than 105 CURVES® facilities currently operating in the State of Alabama. More than 10 of those facilities are located within forty miles of Defendant's current facility.

I certify under penalty of perjury that the foregoing is true and correct. Executed on this 31 day of August, 2007.

_____
Julie Ferrell

GP:2237181 v1

2

# EXHIBIT A
## (TO CERTIFICATION OF JULIE FERRELL)



