IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| CURVES INTERNATIONAL, INC., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:07cv807-MHT |
| | ) | (WO) |
| LISA MOSBARGER, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

In this lawsuit, plaintiff Curves International,
Inc., a fitness-center franchiser, charges one of its
former franchisees, defendant Lisa Lewis (formerly Lisa
Mosbarger), with, among other things, breach of a non-
compete agreement. The diversity-of-citizenship
jurisdiction of the court has been invoked pursuant 28
U.S.C. § 1332.

The court now has before it Curves International's
motion for preliminary injunction asking that, among
other things, Lewis be enjoined from operating a fitness

center pending resolution of this lawsuit.[1]  Based on the evidence presented and argument of counsel, the court concludes that the motion should be denied.

## I. BACKGROUND

The evidence presented to the court reflected the following:

<u>April 1999</u>:  Curves International and Lewis entered into a franchise agreement that permitted Lewis to open and operate a Curves fitness-facility in Deatsville, Alabama for a period of ten years.  The agreement further provided in relevant part: if Lewis abandoned the franchise, she would be deemed in default and Curves

_____

1. Curves International also moves to enjoin Lewis to return confidential and proprietary business information. However, neither the briefing nor the evidence at the preliminary-injunction hearing indicates what confidential information Lewis possesses.  Additionally, Curves International moves to require Lewis to change the telephone number of her fitness business on the ground that the number is the same that she used when she operated one of Curves International's franchises.  The evidence reflects, however, that the phone number has already been changed.

International could terminate the franchise; if the agreement were terminated, Lewis would be prohibited from engaging in any similar business within 40 miles of Deatsville for a period of three years; and this non-compete prohibition included serving in any of the following roles for a nearby competitor: "proprietor, partner, investor, shareholder, member, director, officer, employer, employee, principal, agent, adviser, franchiser, franchisee, consultant or in any other individual or representative capacity," Pl. Exh. 4, § 9(B).  The agreement also provided for one exception to this non-compete prohibition: if Lewis had an ownership-interest in a competitor at the time she entered the franchise agreement, she could continue involvement with that competitor.

April 2006: As a part of a divorce settlement, Lewis was awarded a fitness-facility named "Mike's Gym."  She renamed the facility "Jordan's Gym," after her son, and

3

has operated the facility ever since, either by herself or with someone else.[2]

July 2006:   Lewis discontinued operation of her Curves fitness facility.

October 2006:   Lewis informed Curves International that her Curves facility had closed and would not reopen.

November 16, 2006:   Curves International informed Lewis that her franchise rights were officially terminated.

August 27, 2007:   Acting on complaints from other Curves franchisees, a Curves official visited Jordan's Gym and saw that, indeed, it was a fitness-facility within 40 miles of Deatsville; the offiical also saw Lewis conducting an aerobics class in the gym.

---

2.  At the evidentiary hearing, Lewis and Johnson testified that Jordan's Gym is now called Jordan's Community Center.  However, a sign still remains on the building carrying the name "Jordan's Gym."  Pl. Exh. 2. Additionally, witnesses used the two names interchangeably.  For clarity's sake, the court will refer to the facility as Jordan's Gym.

4

<u>September 7, 2007</u>:  Curves International brought this lawsuit against Lewis, charging (1) breach of contract; (2) misappropriation of goodwill; (3) trademark infringement; (4) trademark dilution; and (5) false designation and misrepresentation of origin.  On the same day, Curves International filed the pending motion for a preliminary injunction.

## II. DISCUSSION

For a preliminary injunction to issue, a moving party must establish the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the preliminary injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm that the injunction may cause the opposing party; and (4) that granting preliminary injunctive relief is not adverse to the public interest.  <u>Ferrero v. Associated Materials,</u>

<u>Inc.</u>, 923 F.2d 1441, 1448 (11th Cir. 1991); <u>Cate v.</u>
<u>Oldham</u>, 707 F.2d 1176, 1185 (11th Cir. 1983).


<u>A. Likelihood of Success on the Merits</u>

Curves maintains that it is likely to succeed on at
least two of its claims: its breach-of-contract claim and
its trademark-infringement claim.


1.  Breach-of-Contract Claim

The franchise agreement contains a provision stating
that "the relationship, rights, and obligations of the
parties of this Franchise Agreement shall be governed by
the internal laws of the state of Texas, except to the
extent governed by the United States Trademark Act of
1946 ...." Pl. Ex. 4, § 14(N).  Because the choice-of-
law issue has not been briefed by both parties at this
time, and because the laws of both Texas and Alabama do
not differ materially on the issues before the court, the
court does not resolve which State's laws apply.

Under the laws of Alabama and Texas, covenants-not-to-compete are enforceable if certain conditions are met. Gafnea v. Pasquale Food Co., Inc., 454 So.2d 1366 (Ala. 1984); Meineke Discount Muffler v. Jaynes, 999 F.2d 120, 123 (5th Cir. 1993). Alabama law provides that such a covenant is enforceable if: (1) the party seeking enforcement demonstrates a protectable interest; (2) the restriction is reasonably related to that interest; (3) the scope of the restriction is reasonable; and (4) the restriction does not impose an undue hardship on the other party. Benchmark Med. Holdings, Inc. v. Barnes, 328 F. Supp. 2d 1236, 1257 (M.D. Ala. 2004) (Albritton, J.). According to Texas law, "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the

7

goodwill or other business interest of the promisee." Tex. Bus. & Com.Code Ann. § 15.50(a); see also Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644, 648 (Tex. 2006).

Lewis does not dispute, at this stage of the litigation, that the covenant-not-to-compete contained in the franchise agreement is enforceable under both Texas and Alabama law.  Therefore, the critical question with regard to this breach-of-contract claim is whether Lewis breached the agreement.

Lewis offers two reasons why she did not violate the covenant-not-to-compete: first, she does not operate or have any financial interest in Jordan's Gym; and, second, even if she did own and operate Jordan's Gym, her actions were permissible under the franchise agreement because she already owned that gym at the time she signed the franchise agreement.

Curves International has established by a preponderance of the evidence that Lewis is an owner and

8

operator of Jordan's Gym.  Lewis received Jordan's Gym as part of a divorce decree, and the court is firmly convinced that Lewis did not sell all her interest in the gym to Johnson and that, instead, Lewis and Johnson own and operate Jordan's Gym together.  To be sure, she and Johnson testified that she sold the gym to him in exchange for one-percent ownership a horticultural center called Natural Beauty Garden Center and that he then leased space from her to house the gym.  However, despite being a part-owner of the garden center for roughly a year, Lewis has not received any monetary payments arising out of her ownership interest; Johnson and Lewis have no documents whatsoever to evidence the substantial monthly lease-payments they say he made to her; until recently, Jordan's Gym used the same phone number as that used by the Curves gym; when the phone number for Jordan's Gym was changed, Lewis, not Johnson, contacted the phone company and had the gym's number changed; Lewis has paid for, or is financially responsible for, the

legal services Johnson has incurred for his businesses; Lewis was seen conducting an exercise class at Jordan's Gym; Jordan's Gym bears the name of her son; Jordan's Gym is located, in Lewis's word, in her "backyard"; and, perhaps most tellingly, in her testimony to this court, she referred in the present tense to the owners of Jordan's Gym as "we" and to the gym itself as "my gym."

Next, this court turns to Lewis's alternative argument that Jordan's Gym is a successor to a gym she owned at the time she entered a franchise agreement with Curves International.  By its terms, the contract's non-compete clause exempts "any interest which Franchisee has in a competitive business on the effective date of this Agreement."  Pl. Exh. 4, at § 9(B).  However, when Lewis entered the franchise agreement on April 5, 1999, she did not own Jordan's Gym, or its predecessor, Mike's Gym, and was awarded the gym in April 2006 as part of a divorce decree.

10

Admittedly, Lewis testified that she owned and operated Mike's Gym before the divorce decree.  The law is, however, clear that the court may believe or disbelieve a witness, in whole or in part, where that witness has testified falsely concerning some important matter.  <u>Alexander v. Chattahoochee Valley Community College</u>, 325 F.Supp.2d 1274, 1292 n.31 (M.D. Ala. 2004) (Thompson, J.); Eleventh Circuit Pattern Jury Instructions (Civil Cases), Basic Instructions 3 & 4.1. Here, Lewis's testimony that she no longer operated or had any financial interest in Jordan's Gym was no mere tarradiddle; it was wilfully misleading.  Because of her intentionally false statement about Jordan's Gym, the court does not credit her statement that she owned and operated Mike's Gym before the divorce decree.

## 2. Trademark Infringement

Because Curves International is likely to succeed on its breach-of-contract claim, "the cardinal principle of

judicial restraint" counsels that this court not determine whether Curves International is likely to succeed on its trademark-infringement claim. <u>Morse v. Frederick</u>, 127 S.Ct. 2618, 2641-42 (2007) (Breyer, J., concurring) ("And the cardinal principle of judicial restraint is that if it is not necessary to decide more, it is necessary not to  decide more.") (internal quotation marks omitted); <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 476 (4th Cir. 2007) ("we should adhere to the cardinal principal of judicial restraint, that if it is not necessary to decide more, it is necessary not to decide more.") (internal quotation marks omitted).

## B. Irreparable Harm

Curves International argues that, because the company would lose customers and goodwill if an injunction were not issued, it would suffer "irreparable harm."  This claim of irreparable harm runs up against an axiomatic principle, however.  To show irreparable harm, a movant

must show that the injury "cannot be undone through monetary remedies." Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1449 (11th Cir. 1991) (quoting Cate v. Oldham, 707 F.2d 1176, 1189 (11th Cir. 1983)); see also BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 970 (11th Cir. 2005) ("economic losses alone do not justify a preliminary injunction").

Curves International has not demonstrated that it is likely to suffer harm that cannot be corrected monetarily if a preliminary injunction is not issued. It is true that "the loss of customers and goodwill is an 'irreparable' injury." Ferrero, 923 F.2d at 1449. Yet, Curves International has not shown that loss of goodwill and customers is likely if this court does not immediately enjoin Lewis from operating Jordan's Gym.

Curves International has not lost customers as a result of the existence of Jordan's Gym; nor is there evidence that anyone has confused, or is likely to

confuse, Jordan's Gym with a Curves franchise.  Jordan's
Gym boasts a large sign that states clearly, "Jordan's
Gym."   Pl. Exh. 2.   Moreover, the equipment used at
Jordan's Gym is not the same equipment used in Curves
gyms, and, while some of equipment in Jordan's Gym was
arranged similarly to the way Curves International
arranges its equipment, there is nothing the record to
substantiate that such an arrangement is unique to
Curves.   And, finally, while a Curves International
official testified that it might be difficult, or even
"impossible," to convince a new franchisee to open a
Curves franchise near Jordan's Gym, the official offers
nothing other than this bare assertion to make the point.

A claim of irreparable injury "must be neither remote
nor speculative, but actual and imminent." Northeastern
Fla. Chapter of the Ass'n of Gen. Contractors v. City of
Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)
(quoting Tucker Anthony Realty Corp. v. Schlesinger, 888
F.2d 969, 973 (2d Cir. 1989)).   Curves International's

allegation of loss goodwill does not meet this prerequisite. <u>Compare</u> <u>BellSouth Telecommunications, Inc.</u>, 425 F.3d at 970 (record showed that, in the absence of an injunction, "BellSouth was losing about 3200 customers per week"); <u>Spiegel v. City of Houston</u>, 636 F.2d 997, 1001-1002 (5th Cir. 1981) (record showed business had decreased 50% in the absence of an injunction) with <u>Rubenstein v. Bauman</u>, No. 1:07cv798, 2007 WL 3120258 (M.D. Ala. Oct. 23, 2007) (Thompson, J.) (adopting magistrate judge's opinion denying a preliminary injunction where speculative assertions lacked evidence).

### C. Weighing the Hardships and the Public Interest

Because Curves International has not demonstrated irreparable harm, there is no need for the court to weigh the competing hardships or assess a preliminary injunction's impact on the public interest.

### III. CONCLUSION

Because Curves International has not demonstrated that it will suffer irreparable harm in the absence of an injunction, its motion for a preliminary injunction will be denied.  An appropriate order will be entered.

DONE, this the 5th day of December, 2007.


                    /s/ Myron H. Thompson
             UNITED STATES DISTRICT JUDGE