U.S. DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CURVES INTERNATIONAL, INC.,      )
                                 )
            Plaintiff,           )
                                 )
v.                               )      CASE NO.  2007-CV-807-MHT
                                 )
                                 )
                                 )
LINDA S. MOSBARGER,              )
                                 )
            Defendant.           )

## BRIEF RELATED TO MOTION TO ADD PARTIES

**COMES NOW** the DEFENDANT LINDA S. LEWIS, by and through undersigned counsel, and  requests this Honorable Court to consider the following in this Brief Related To Motion To Add Parties:

1.  The number one issue in this matter is whether the Plaintiff has standing to bring and maintain this action in Federal Court.  Therefore, in light of recent court rulings, this brief is Moot with the exception of stating it is now, and always has been the position of the Defendant that she is the party victimized by circumstances in this matter.

2.  The Defendant at all times has acted in a "good faith" attempt to civilly resolve this matter.  See, Letters of October 26, November 1, and November 21, 2007, from Defendant to Plaintiff.

3.  Contrary to Alabama State law and the principles of equity and justice as set out in Federal Rule 1, the Defendant has had every remedial step taken in an attempt

to amicably resolve this matter at the earliest point in time possible, used against her in this matter.

4. By September of 2007, Linda Lewis had a "good faith" belief, as did many other members of the Possum Trot Community that someone was trying to watch individuals dressed in limited, exercise clothing in a "Peeping Tom" or "stalking" fashion at Jordan's Gym (formerly Mike's Gym & Fitness Express, and subsequently known as The Jordan Community Center) by stopping in the middle of the road and looking at the participants. Prior to the Defendant being served with notice of this legal action, verbal complaints had been made to law enforcement officers in Elmore County regarding this matter.

5. At no time, until legal counsel was referred to the Defendant by the State Bar Association , and copies of the early filings of the Plaintiff were obtained from the Clerk of the Court did Linda Lewis connect any of the legitimate community fears of "Peeping Toms", stalkers, trespassers, criminal mischief, vandalism or assault to Curves or the case at hand.

6. Elmore County law enforcement officials had been contacted regarding the community's concern prior to Curves representatives admittedly arriving uninvited, unscheduled and without contacting the Defendant-owner, or under signed legal counsel, for permission to inspection the subject property in accordance with the Federal Rules of Civil Procedure and State of Alabama Bar Association ethical provisions. See, Incident Offense Reports.

7. The Plaintiff would like to create side issues, perhaps to "muddy up the court record", create subterfuge, confuse the court or re-coup money for failing to

properly research the matter or send the proposed Defendant a cease and desist letter **prior** to bringing this costly, out of state federal lawsuit which the Defendant has always maintained was based upon mistake of facts and law. Note, Fed.R.Civ..P. 11; See, Didie v. Howes, 988 F. 2d 1097, 1103-1104 (11th Cir. 1993).

8.  All actions the Defendant has taken have been in the legitimate defense of this law suit.  See, Letter of November 1, 2007, from Defendant to Plaintiff.

9.   The Advisory Committee Note to Rule 11 specifies that the rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories...or to "impinge upon counsel's obligation to represent the client to the best of his or her abilities;" nor to punish the losing side in a legal controversy. Donaldson v. Clark, 819 F.2d 1551, 1561 (11th Cir. 1987).

10. From the beginning, the Defendant has maintained improper conduct on the part of the corporate Plaintiff in bringing this action based upon the admitted actions of the Plaintiff's employees or agents along with the lack of legal support for the complaint based upon the exception expressly contained within Curves' franchise contract at Section # 9. B. for pre-existing businesses like Mike's Gym (aka, Fitness Express, Jordan Gym).  See, Letter of December 13, 2007 from Defendant to Plaintiff.

11.  The common denominator between this factually improper and contractually unwarranted action and a prior improperly filed and subsequently dismissed State Court of Texas action of Curves against this same Defendant, is Kevin Ayers, Curves' in-house legal counsel, who apparently spearheaded or instigated both

improper actions.  The Texas action is a matter of public record and was dismissed in 2001, as the Defendant maintains should occur in this matter pursuant to Fed.R.Civ.P. 11, 12 (b)(1), 12 (b)(6) and 56, full brief to be filed on this issue on or before February 8, 2007 as per the Court's Order.

12. The Defendant did not bring this action or take any defensive tactical moves in bad faith or for any improper or unethical or unlawful purpose.

13. But it should be considered that certain improper acts of the corporate Plaintiff have caused much of the confusion in this matter.   With the obvious one being the Plaintiff's failure to abide by the franchise contract's mediation requirements prior to bringing a legal action

14. Thus far, the Plaintiff has refused to comply with all discovery requests made by the Defendant, both prior to the Defendant's deposition, at the deposition, at the injunction hearing and subsequent thereto.  An opportunity to have received discovery from the Plaintiff may have linked the "stalker" complaints, believed break-in at the gym, assault on the Defendant and damaged door to the Plaintiff's "legal department" prior to the Defendant's Counter Complaint being filed against the Plaintiff-Curves and agents on November 12, 2007, before Julie Ferrell testified she had been sent to "Jordan's Gym" by the corporate Plaintiff's "legal department."

15. Once again the Counter complaint against the corporate Counterclaim Defendant-Curves and the other named individuals was primarily filed to protect the original Defendant-Linda Lewis (Mosbarger) from further threats, real or perceived at the time, to her personal safety.

16. An additional reason the Defendant-Linda Lewis requested the Court to add the named individuals to this matter, was to resolve who was civilly responsible for causing the on-going set of circumstances, harassment or hysteria experienced by the Possum Trot community located adjacent to the new building starting from late August, 2007, until November of 2007, evidenced by the unusual happenings set out in the law enforcement incident reports, affidavits and verbal reports among neighbors in this small, rural community prior to the filing of the Counter Complaint against Curves and its named agents.

17. After all, the Attorney Michael Gray admitted to the Elmore County Sherriff Deputy J. D. Dasinger, he did not have attorney permission to inspect the facility or be on Defendant-Linda Lewis's property.   The Deputy later advised had he realized that Ms. Lewis owned the property in question which was being disputed by the attorney and Ms. Lewis, the attorney would have been "trespassed off" the property, as was his normal procedure in such matters, but on November 1, 2007, he had been misled to believe Ms. Lewis did not own the property by the attorney.

18.  Note, the following:

- The facility is located in a residential area and next to the Defendant's house; therefore, the Plaintiff's Attorney appears to have purposely tracked the Defendant down to further harass and intimidate her just prior to the deposition the next day and to have had contact with the Defendant, as he did, was undeniably a violation of Alabama State Ethical Rule 4.2, which states:

> *"In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyers knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."*

- By staying on the premises, after being asked to leave, and the Defendant-Linda Lewis because of the attorney's argumentative nature being forced and visibly upset to gain the assistance of stated law enforcement officer to finally get the Plaintiff's attorney to leave, all the elements of committing the crime of Criminal Trespass, 2nd Degree, a Class C misdemeanor, punishable up to a year in jail, pursuant to the Alabama Criminal Code-Section 13A-7-3, were committed by Michael Gray on November 1, 2007, in Elmore County, Alabama. Note, *Johnson v. State, 611 So. 2d 457 (Ala. Crim. App. 1992),* which determined that the crime of criminal trespass does not include the element of "intent" to commit a crime.

19. At a minimum a chronological sequencing of events, along with the admissions by the Curves representatives of actual physical presence at the subject location, in addition to the circumstantial evidence of the events surrounding this particular lawsuit, suggests a number of self-serving incidents and statements have been orchestrated by the corporate Plaintiff/Counter Complaint Defendant-Curves or its representatives.

20. Coordination among the named individuals in the Defendant's Motion to Add are now obvious, and at the time they were very concerning and frightening to the

area residents including Defendant-Linda Lewis who lives next door to the facility at issue in this remote area of Alabama just north of Holtville and south of the Deatsville city limits.

21. Additionally, since assault, criminal mischief, trespass, etc., are beyond the scope of employment, until Julie Ferrell testified at the Injunction Hearing on November 21, 2007, the "legal department" had sent her on her mission to Jordan's Gym, it was presumed by the Defendant the actions of the named individuals were outside of their employment with the corporate Plaintiff. Note the Counter Complaint was filed on November 12, 2007, prior to the Injunction Hearing, which began on November 21, 2007, followed shortly thereafter with Thanksgiving, Christmas and the New Year holiday period.

22. The Plaintiff focuses on procedural defects which may have been corrected had the Defendant chosen to go down that tactical path and had access to the reciprocal Discovery the Defendant has been seeking from the Plaintiff from the beginning of the Defendant's defense; but this issue is now Mooted by the Court recent ruling regarding the individually named Co-Defendants of the Defendant's Counter complaint against the corporate Plaintiff-Curves.

23. While the common law action of harassment, interference with business and trespass, are cognizable torts; describing the trespass as "criminal" was not artful but descriptive of the serious and intentional nature of the claim along with adequately placing the parties on notice concerning the matter complained of in the Defendant's legitimate attempt to avoid all further non-courtroom contact with the corporation (Counter complaint Defendant/Plaintiff-Curves) or its agents.

24. The Corporation's argument that an improper purpose existed in Ms. Lewis attempting to find out who was causing her to be wrongfully sued in her opinion is counter-intuitive and without reasonable support. Linda Lewis has nothing to gain by this lawsuit or by harassing the Plaintiff or any of the named individual employees or agents of the Plaintiff. Ms. Lewis was not harming any one with her business practices subsequent to terminating her Curves franchise. In fact, she has always merely wished to settle this matter.

25. On the positive side, since the filing of Ms. Lewis' Counter Complaint against the named corporation and certain named agents, there have been no more "stalking" or "Peeping Tom" incidents of cars just stopping in the middle of the road to watch the scantily clad individuals who work out at Jordan's Gym/The Jordan Community Center; or "suspicious individuals" noticed in the community.

26. Also, Ms. Lewis has not been harassed at her new horticulture /plant business since the November 21, 2007, Injunction Hearing. Please consider that Mr. Ken Johnson's and Ms. Lewis' new plant business has been harmed economically by the parties having to miss work on numerous occasions from September of 2007 leading right up to the Wednesday before Thanksgiving at the Injunction Hearing, which could have been easily avoided by the corporation complying with the Defendant's reciprocal Discovery Requests, the Plaintiff's franchise contract mediation requirements being complied with, and settlement attempts by the Defendant being considered prior to the Injunction Hearing. See, attached letters and franchise contract.

27. Likewise, the Plaintiff could have, and has been urged by the Defendant to admit this was all based upon an "accidental oversight", "misunderstanding" or innocent mistake. The Plaintiff will not do this despite admitting at the Injunction Hearing the Corporation had not suffered any economic harm by Ms. Lewis' pre-existing business (Jordan's Gym) continuing to operate.

28. Plaintiff also suggests without supporting this premise, the possibility of a motive of Ms. Lewis seeking to increase the cost of litigation. This allegation is ludicrous. Ms. Lewis was financially drained from her Divorce which led to closing the Curves franchise. She has been living off of a coin collection and the instant litigation will likely ruin her financially, if it has not already. By comparison, Curves can readily afford to pay in house counsel, a multitude of process servers; a double set of out of state lawyers; and has not intimated that the named individuals have incurred any out of pocket expenses related to the Counter Complaint listing objectionable actions they had performed which harmed Ms. Lewis found offensive. To suggest that Ms. Lewis had the motive of getting into a spending contest with the corporate Plaintiff is pure unsupported nonsense.

29. While the Defendant "felt like a fish out of water" and was noticeably nervous at the November 21, 2007, hearing, she is deferential and respectful towards the Court's preliminary findings. Undersigned counsel, subsequently, came into possession from independent sources and the Defendant of evidence not available or un-known at the Injunction hearing which appears to fully support Ms. Lewis' testimony that she was a co-owner of Mike's Gym from the time it opened in

1997 throughout her operation of the Curves franchise in Holtville from 1999-
2006. The information which was filed with the Defendant's recent Brief in
Support of Pending Motions, including the 1997 newspaper article listing Mike
and Linda Mosbarger as owners of the pre-existing gym in Holtville, was made
available to the Plaintiff along with a request to dismiss this action on or about
December 13, 2007. Note, Letter of December 13, 2007, from Defendant to
Plaintiff.

30. The numerous failures of the corporate Plaintiff to live up to the conditions set out
in Plaintiff's own franchise contract, should bar continuation of this matter
coupled with the lack of contract support for this federal lawsuit of the Plaintiff.
While the wrongful actions of the Plaintiff and its agents against the Defendant in
this matter under the guise of this "no economic harm" corporate boiler-plate
form complaint which does not fit the facts in this matter related to the Plaintiff's
contract with the Defendant, may have been more appropriately procedurally
raised by the Defendant at a Post-Judgment request for Rule 11 sanctions stage,
procedurally Ms. Lewis, as stated earlier in this brief, at all times was merely
trying in a "good faith" manner to bring this federal action to an economic
conclusion as soon as possible.

31. The Defendant's "Counterclaims" against both the corporate Plaintiff and its
agents were not "baseless" or motivated by an improper purpose. Had the
Plaintiff responded to the Defendant's reciprocal request for Discovery the
procedural flaws could have been corrected in a timely fashion.

32. In sum, the Defendant's attempts to get to who caused her this unfortunate legal expense and interference with her new business are now thwarted with the dismissal of the individually named tortfeasors with prejudice.

33. By contrast, the corporation on the other hand, seeks to maintain a federal court action without contractual support or any evident economic damages; no tender of performance of the franchise contract provisions for purchase of past franchise holder's equipment upon demand of its return; no attempt to comply with the franchise contract's mediation provisions; no reciprocal discovery being delivered to the Ms. Lewis despite Defendant's request for such; no prior notice of how or when the Corporate entity gained entry and pictures of the interior of the new building despite requests for such from the Defendant; plus, the clandestine acts of the corporate Plaintiff leading up to the Injunction Hearing appears purposeful since you can not defend against surprise allegations such as Ms. Lewis falsely being identified by Ms. Ferrell who admitted she had never previously met Ms. Lewis; with the Plaintiff represented by an attorney who will not submit proof of compliance with the State Bar Rules and maintained to law enforcement he was not trespassing or violating any Rules of Professional Conduct by talking to the Defendant without her legal counsel.

34. The Defendant-Ms. Lewis respectfully offers, the Plaintiff has no current goal in the continuation of this lawsuit other than to financially ruin the Defendant with her legal fees, and they hope, additionally those of Plaintiff-Curves.

35. At no time has the Defendant, or her legal representatives, done anything illegal, unethical or in any way wrongful in this matter, all actions were taken in the

proper legal defense of this matter. Legal procedural, tactical and client

protection procedures do not merit Rule 11 sanction consideration. Especially,

considering the Plaintiff's allegations stem from an issue of adding a party which

in accordance with the Federal Rules of Civil Procedure may be accomplished by

"any party or [the court] of its own initiative at any stage of the action." See,

*Fed.R.Civ.P. 21; Ingram v. CSX Transportation, 146 F.3d 858, 861 (11th Cir.*

*1998).*

36. Under the Federal Rules of Civil Procedure a Judge can add a party deemed to be

indispensable, so the request for such in the initial filing of the Counter complaint

was not improper, and like wise with the Defendant's subsequent Motion to Add,

which the Defendant at all times has maintained was fully authorized by the law

and facts of this matter, which is completely different from choosing not to pursue

a side issue in preference of staying on track and proceeding with the primary

issue of the Defendant's defense---namely, the Plaintiff's failure to state a claim

in consideration of the Plaintiff's franchise contract having an exception to its

mandates for pre-existing gyms. Section #9. B.-Curves Franchise Contract,

previously filed.

37. There was no time limit or statutory bar to bringing a Rule 19, 20 or 21 action to

add a party which would be applicable to the facts when the Plaintiff brought its

first Motion for Sanctions; at the time, it had appeared the Defendant's initial

request to the Court to add the named parties had been allowed both by the

Court's and opposing counsel's statements and actions in recognizing such at the

November 21, 2007, hearing, a review of the transcript of such shall reveal.

38. But as stated earlier, the Defendant except for defense of the Plaintiff's improper request for Rule 11 sanctions does not wish to belabor the issue, or lose the focus of the Defendant's theory of the case that being the Plaintiff's Complaint is not a breach of contract matter and does not have federal jurisdictional standing.

39. This further jelled with the Defendant at the time it was decided whether or not to bring a summary judgment motion, and did not fully crystallize until briefing such summary judgment brought it more clearly to the Defendant's attention on or about January 20-21, 2008, that the Plaintiff's actions were apparently orchestrated and pre-meditated from the start of this questionable action.

40. The Defendant intended the Motion To Add Indispensable Parties filed on January 18, 2007, to be taken as a procedural "housekeeping" move to allow for a favorable ruling for the Defendant. Said Motion to Add was filed merely in response to the Plaintiff's earlier Motion to Dismiss, which the Defendant found unsupported by the facts and procedural guides of the Federal Rules of Civil Procedure .

Respectfully submitted,

Donnie J. Morrow
(#ASB-6870-O78C)
Attorney for LINDA S. LEWIS

OF COUNSEL:
Grainger Legal Services, LLC
4220 Carmichael Court, N.
Montgomery, Alabama 36106
Tel. (334) 260-0500
Fax (334) 260-5580
E-mail cgrainger@graingerlegal.com

## CERTIFICATE OF SERVICE

The undersigned verifies a true and accurate copy of this document has been delivered to the following (Defendants and purported legal counsel) by placing on this date a copy of such in the U. S. mail, proper postage prepaid, on this the 1st day of February,2008, and addressed as follows:

Joseph W. Carlisle
William D. Jones, III
JOHNSTON, BARTON,  PROCTOR & ROSE, LLP
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, AL   35209

Jason J. Stover
Micheal R. Gray
GRAY, PLANT, MOOTY, MOOTY & BENNETT, PA
500 IDS Center, 80 South Eighth Street
Minneapolis, MN   55402

Connie J. Morrow
(#ASB-6870-O78C)

**DOCUMENTS OF SUPPORT**

# Grainger Legal Services, LLC

| | | |
|---|---|---|
| Tel: (334) 260-0500<br>Fax: (334) 260-5580 | 4220 Carmichael Court North<br>Montgomery, Alabama 36106<br>www.graingerlegal.com | Chuck Grainger, Attorney at Law<br>Connie J. Morrow, Attorney at Law |

October 26, 2007

Jason J. Stover                                    William D. Jones III
Michael R. Gray                                   Joseph W. Carlisle
500 IDS Center, 80 South Eighth Street            Colonial Brookwood
Minneaplois, Minnesota 55402                      569 Brookwood Vill., 901
jason.stover@gpmlaw.com                           Birmingham, AL 35209
mike.gray@gpmlaw.com                              jwc@johnstonbarton.com

RE: *Curves, International, Inc. v. Linda S. Mosbarger*

Dear Gentlemen:

Enclose please find Linda S. Lewis's responses to your Expedited Discovery Request.
Some of the requests, such as Interrogatory 5, 6, 11, 14, 15 & 16-Request for Documents
7, 9, 10, 13, 15 & 16, the Plaintiff is in a better position to respond since your client is
computerized and still in the Curves business. My client no longer has access to the
delineated information, following her July, 2006, dissolution of her Curves franchise in
Holtville, Alabama. This is the main basis of the Defendant's Objection enclosed herein.

As stated earlier, I believe this matter is a case of an accidental oversight with regards to
the phone number and a misunderstanding about what Ms. Lewis is currently doing for a
living.

After reviewing the enclosed, please notify us of any possibility to reach a settlement in
this matter and to avoid any further expense including but not limited to the pending
Deposition set for November 2, 2007, at our office. Ms. Lewis informs me she has no
desire to compete with Curves. Likewise, Mr. Johnson along with Ms. Tendley tell me
the exercise equipment in the Community Center is not and never has been Curves
equipment since it opened in January of 2007.

Additionally, please re-imburse Ms. Lewis, pursuant to the terms of her franchise
agreement with Curves, it appears she is entitled to at least $10,500 for the 10 pieces of
Curves equipment she has in storage, at the rate of $1,500 per piece of equipment. Also,
it is my opinion, in accordance with her franchise agreement she is due to be re-imbursed
for the costs she has incurred in defense of this case of mistaken information, or perhaps

purposeful harassment. Please contact me at you earliest convenience to discuss this matter.



Connie J. Morrow

# Grainger Legal Services, LLC

Tel: (334) 260-0500                                    4220 Carmichael Court North                    Chuck Grainger, Attorney at Law
Fax: (334) 260-5580                                    Montgomery, Alabama 36106                    Connie J. Morrow, Attorney at Law
                                                                    www.graingerlegal.com

November 1, 2007

ELECTRONIC DELIVERY

Mr. Michael Gray
Mr. Jason Stover
Gray, Plant Mooty & Bennett, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, MN    55402-3796

Dear Mr. Gray and Mr. Stover:

As I was in the process of drafting this letter, in order to forward to you the requested
documentation listed in Mr. Gray's letter of October 31, 2007; when I received a call
from my client informing me Mr. Gray had ambushed her outside the presence of her
legal counsel when he knew she was represented by Chuck Grainger and myself. This
unethical conduct was coupled with a criminal act of trespass, when Mr. Gray upon being
requested to leave did not and my client was forced to contact law enforcement officials
for her protection. Clearly, it is indisputable this was unethical and unprofessional
conduct on the part of Mr. Gray with a result of making him a party to the case.

Do not contact my client again, in any manner whatsoever. The professional course of
action if you were seeking the truth and a meritorious outcome on behalf of your client,
would, of course, have been to have dropped by my office which is closer to the airport
and obtained a copy of the documents requested in the October 31st request. We will not
tolerate this course of action any further, including the wrongful conduct of your
trespassing process server who reportedly harassed and assaulted my client last month.
This is not normal behavior and must immediately cease.

Yours truly,



Connie J. Morrow

Enclosures

# Grainger Legal Services, LLC

Tel: (334) 260-0500
Fax: (334) 260-5580

4220 Carmichael Court North
Montgomery, Alabama 36106
www.graingerlegal.com
December 13, 2007

Chuck Grainger, Attorney at Law
Connie J. Morrow, Attorney at Law

<u>ELECTRONIC DELIVERY & U.S. MAIL</u>

Michael R. Gray
Jason J. Stover
500 IDS Center, 80 South Eighth Street
Minneaplois, Minnesota 55402
jason.stover@gpmlaw.com
mike.gray@gpmlaw.com

Joseph W. Carlisle
William D. Jones III
Colonial Brookwood
569 Brookwood Vill., 901
Birmingham, AL 35209
jwc@johnstonbarton.com

RE: *Curves, International, Inc. v. Linda S. Mosbarger*

Dear Gentlemen:

While contemplating our client's response to Curves' settlement proposal of December 7,
2007, which we disagree with based upon a true understanding of the facts; we received
the December 11, 2007, letter from Counterclaim Defendant Michael Gray. Since the
tenor of Mr. Gray's letter was threatening, clearly human emotions were involved in the
institution of this matter more than a mere misunderstanding or mistake could explain
away. While I do not believe it is productive for either side to address each and every
false statement; improper service of process is not a Rule 11 matter. On the other hand,
a lawyer communicating with an opposing party outside the presence or knowledge of
their attorney is Rule 11 material; ditto with regards to conflict of interests between a
lawyer and his client. Co-party Gray asserted a procedural attack to the following
indispensable parties, Kevin Ayers and Julie Ferrell, who have been presented as current
employees of the Plaintiff who were involved in the decision of whether or not to bring
this lawsuit in the first place, as opposed to sending a "cease and desist letter" to resolve
this dispute. This procedural attack is unsupported by a close reading of *Federal Rule of
Civil Procedure 4.* I take this opportunity to question all of Curves' legal representatives
on ethical grounds, as follows:

*Does Michael Gray still represent Curves in this action as an attorney, and did he not
represent Curves at all times relevant to this matter? Did he not accept service for
Curves? Are Kevin Ayers, Julie Ferrell and Gray not employed by Curves?*

Please, given the possible conflict of interests in this matter, we wish to clarify if service
of process for Curves is still applicable with Gray's law firm. Due diligence in
investigating such legal issues is amplified when the matter is brought in Federal Court.
Therefore, based upon everything the Plaintiff has thrown at the Defendant, and after
interviewing approximately 20 potential witnesses in the Holtville area, some of whom
have known Linda S. Mosbarger Lewis for over 40 years, I do not believe Curves will
prevail, once we proceed with the Counterclaim to a jury trial.

Enclosed please find affidavits of support. The evidence establishes the Defendant was a co-owner of Mike's Gym's since the business originated in 1997. Mike's Gym was co-owned and co-operated with the Curves franchise in Holtville, Alabama, after the Curves business was opened in May of 1999. During the time Mike's Gym and Curves operated contemporaneously, side by side sharing a phone listing, Mike's changed its name to Jordan's Gym in 2006, subsequent to the Mosbargers' divorce. The Curves business folded in the summer of 2006. Later in November of 2006, Jordan's Gym re-opened at a new location, as an expanded service community center with options for the general public to rent the facility for private use for birthdays, anniversaries, family reunions and such. Even if the newly named enterprise "The Jordan Community Center", which had been operational for less than one year at the time this action was brought, was operated for a profit, it does not violate the franchise agreement at issue due to the franchise contract's exemption of pre-existing businesses. This was factually not rebutted by any evidence the Plaintiff has presented at the hearing or otherwise. The new evidence contained in the four affidavits, enclosed herein, was unavailable at the preliminary injunction hearing on November 21, 2007, because of conflicts related to the Thanksgiving holiday. Also, note we plan to call a former regional director of Curves, Janie Little, as a witness on the issue of Curves knowing about Mike's Gym pre-dating the subsequent Curves franchise. Therefore, it is our position that the franchise contract is unenforceable on the issue of the "covenant to not compete," since the Defendant factually falls within an exception. As you know, since the franchise contract was devised by Curves, "strict scrutiny" against Curves would be applicable in the interpretation of the franchise agreement.

This having been stated and laying it all out on the table, I agree with Jason Stover's conclusion in the December 7th settlement proposal letter. Clearly, this is not a big money case and it is in the best interest of each of the parties to settle this passionately contested matter as soon as possible. Without conceding subjugation to the franchise agreement, we are willing to sign a release and dismiss all allegations raised in the Countercomplaint, which was factually supported both by affidavit testimony, the relevant portions of testimony at the recent hearing and three (3) law enforcement incident reports; if the Plaintiff-Curves is willing, likewise to dismiss all claims against the Defendant, and abide by the following proposed settlement provisions:

1. Dismiss the pending Federal Court action by joint agreement with prejudice so no similar matters could be brought against Linda S. Lewis Mosbarger by Curves' in the future;

2. The Plaintiff agrees to pay all court costs, if applicable, in order to obtain a settlement in this matter;

3. As soon as possible, and before December 19, 2007, Curves would elect whether it wishes to purchase the Curves equipment the Defendant has in her possession;

4.  If Curves chooses to purchase the used exercise equipment, Curves would agree
    to pay Mrs. Mosbarger $10,500 for the used Curves equipment upon removing
    said equipment prior to December 19, 2007, from the Defendant's custody at
    Curves' expense;

5.  Curves would promptly pay in full all of the Defendant-Linda S. Lewis
    Mosbarger's reasonable attorney fees, expenses and costs involved in this
    litigation prior to December 19, 2007, which are just over $27,000, since the
    Defendant was the prevailing party at the preliminary hearing, and the Plaintiff
    would not discuss settlement options prior to the hearing on November 21, 2007;
    and,

6.  In light of the questionable enforceability of the franchise agreement, release Mrs.
    Mosbarger in full from any further allegations of obligations there under,
    including, but not limited to forgiving the alleged $21,000 in "early termination"
    fees and ceasing attempts to enforce the "covenant to compete."

This legal controversy has hurt a number of truly innocent parties. Plus, one could
argue it appears this litigation was brought more for an improper vindictive purpose,
rather than being generated from economic necessity or a bona fide business reason.
Note, Julie Ferrell's testimony has been seriously challenged by the new affidavits.
Remember she alleged the owner of the Wetumpka branch of Curves had complained
to Curves' in house legal department, but just this week the current owners of the
Wetumpka branch told investigators they did not know anything about this litigation
and have never complained about Linda S. Lewis Mosbarger to Curves management.
Looking at the situation without the attached bias of the parties, a jury would be in the
posture of being asked to believe an international corporation with employees who
admittedly made some mistakes in this matter versus 20+ credible witnesses from
Autauga, Elmore and Montgomery counties who have never prior to this action
testified in a litigated matter, been arrested nor do they have any economic or
financial interest in this debate, excluding Linda Lewis as a substantive witness. I
would be happy to provide you with such a list of people, along with names,
addresses, and phone numbers, if you are so inclined to proceed to a jury trial and do
not wish to settle this matter prior to December 19, 2007.

Thanking you in advance for your professionalism and courtesy in presenting this
equitable and good faith offer of settlement to your client. As you are aware, at the
very beginning, this side wanted to settle the case. Please respond by December 19,
2007, if your client is inclined to settle this matter in accordance with this proposal.

Yours truly,



Charles E. Grainger, Jr.
Connie J. Morrow
Attorneys for the Defendant-Linda S. Lewis Mosbarger

Enclosures