UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Curves International, Inc., | |
| Plaintiff, | Case Action No. 2007-CV-807-MHT |
| vs. | **PLAINTIFF CURVES INTERNATIONAL, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS/SUMMARY JUDGMENT** |
| Linda S. Lewis, | |
| Defendant | |

## I.   INTRODUCTION

Since this Court's December 5, 2007, Order resolving plaintiff Curves International, Inc.'s ("Curves'") Motion for Preliminary Injunction, defendant Linda Lewis ("Lewis") and her counsel have filed a motion for reconsideration, motion to add indispensable parties, and now a "Motion to Dismiss Summary Judgment Motion." In addition to their common disregard for the procedural requirements of the Federal Rules of Civil Procedure, these motions lack any reasonable foundation in the facts of this case. Lewis' entire motion for summary judgment is premised on her assertion that she was the owner of Mike's Gym prior to the date she signed a Curves Franchise Agreement ("Franchise Agreement"), that Curves knew of that ownership interest before that date, and that Jordan's Gym constitutes a mere continuation of that business. Lewis fails to offer any interrogatory responses, documents obtained from Curves through discovery, admissions, or deposition testimony to support her claims. Instead, Lewis relies on her own unsupported allegations and a conclusory affidavit signed by 86 individuals, none of whom has any apparent personal knowledge of the facts to which they "testify."

1

In its December 5 Order, this Court already squarely rejected the version of facts propounded by Lewis. In fact, this Court specifically found that "when Lewis entered the franchise agreement on April 5, 1999, she did not own Jordan's Gym, or its predecessor, Mike's Gym, and was awarded the gym in April 2006 as part of a divorce decree." (Docket 47, p. 10). Lewis' motion ignores the Court's previous determination of that issue, as well as her own previous deposition testimony in which she *admitted* that (a) she did not own Mike's Gym at the time she became a franchisee, (b) she did not inform Curves of her supposed ownership interest, and (c) she completely closed Mike's Gym after her divorce before later opening Jordan's Gym at an entirely different location. It certainly cannot be said that the undisputed facts entitle Lewis to judgment as a matter of law in this matter. In fact, once discovery has been completed, Curves may well ask this Court to grant summary judgment in its favor. At this early stage of the proceedings, however, there is certainly no basis on which to grant Lewis summary judgment on the disputed facts she presents.

## II.     SUMMARY JUDGMENT STANDARD

"Summary judgment should be granted only if there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Baucom v. Sisco Stevedoring, LLC*, 506 F. Supp. 2d 1064, 1071 (S.D. Ala. 2007). As the movant, Lewis bears the initial burden of proving that summary judgment is proper on the undisputed facts of this case. To meet that burden, Lewis must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [she] believes demonstrate the absence of a genuine issue of material fact."[1] *Cook Oil Co., Inc. v. United States*, 919 F. Supp. 1556, 1561 (M.D. Ala. 1996). If the record reveals that factual disputes

---

[1] Lewis cannot rely on any discovery responses from Curves because Lewis has yet to serve any written discovery in this matter.

exist, the Court must not decide those disputes but must instead deny the motion. *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001). In making that decision, this Court must, of course, construe the factual record in the light most favorable to Curves as the nonmoving party. *Baucom*, 506 F. Supp. 2d at 1067 fn 2.

"The basic issue before the court on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *United States v. One 1991 Chevrolet Corvette*, 390 F. Supp. 2d 1059, 1064 (S.D. Ala. 2005). An issue of fact exists and precludes summary judgment if a reasonable fact finder could return a verdict for the nonmoving party. *Bost v. Federal Express Corp.*, 372 F.3d 1233, 1237 (11th Cir. 2004); *see also Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) ("If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment").

## III.    DISPUTED FACTS AND ARGUMENT

Lewis signed a Franchise Agreement with Curves effective April 5, 1999. (Defendants' Brief, Ex. C). At that time, Lewis' husband Mike owned a gym and fitness facility named Mike's Gym located at 97 Lightwood Road. (Deposition of Linda Lewis ("Lewis Dep."), pp. 11-12). Lewis established her CURVES® location in an adjacent building that bore the same street address. (*Id.*). Lewis later relocated her CURVES® facility to 10009 Holtville Road. (*Id.*). At the same time, Lewis' husband relocated Mike's Gym to the same physical address, to a location again adjacent to his wife's business. (*Id.*).

When Lewis became a CURVES® franchisee in April 1999, she did not own Mike's Gym. Instead, that business was owned solely by her husband. As this Court found in its December 5 Order:

> Next, this court turns to Lewis's alternative argument that Jordan's Gym is a successor to a gym she owned at the time she entered a franchise agreement with Curves International. By its terms, the contract's non-compete clause exempts 'any interest which Franchisee has in a competitive business on the effective date of this Agreement." However, when Lewis entered the franchise agreement on April 5, 1999, **she did not own Jordan's Gym, or its predecessor, Mike's Gym**, and was awarded the gym in April 2006 as part of a divorce decree.

(Docket 47, p. 10) (emphasis added). While this Court noted that Lewis claimed that she did, in fact, own Mike's gym prior to April 5, 1999, the Court specifically found that testimony to be unreliable. (*Id.*, p. 11). As this Court explained, "because of [Lewis'] intentionally false statement about Jordan's Gym, the court does not credit her statement that she owned and operated Mike's Gym before the divorce decree." (*Id.*).

The divorce decree attached as Exhibit A to Lewis' brief also confirms that Lewis did not own Mike's Gym until after her divorce was complete. Article 7 of that decree specifically awarded that business to Lewis. (Defendant's Brief, Ex. A). Lewis also testified during her deposition that she did not acquire her ownership interest in Mike's Gym until after her divorce was finalized in March 2006.

Q. I thought you closed Mike's in March of 2006?

A. No, that was our divorce. It was his—his gym was handed to me in the divorce or awarded to me.

Q. So in July of 2006 you closed Curve's but Mike's Gym continued to operate?

A. Right.

Q. And you owned it?

A.      It was awarded to me.

(Lewis Dep., p. 150).

The record is also void of any evidence to suggest that Lewis informed Curves of her alleged ownership interest in Mike's Gym before signing the Franchise Agreement.  In fact, Lewis admitted during her deposition that she had not disclosed such an interest to Curves. Discussing the Application she completed to become a CURVES® franchisee, Lewis testified that:

Q.      You don't mention anything about Mike's Gym on that application, do you?

A.      Oh, I know what this is now.  No, there was no need.

Q.      You didn't disclose that Mike's Gym existed or that you worked there or that you were employed there; correct?

A.      There was no need to, right.

Q.      Okay.  And at the time that you applied for or filled this out, you were an executive assistant at Sterling Bank; correct?

A.      I worked for Sterling in the same time **Mike had his gym.**

Q.      Well, again on the lower portion of the first page you only write that you're an executive assistant for Sterling Bank.  There's nothing about Mike's Gym, is there?

A.      No.

Q.      So you were an executive assistant at Sterling Bank at the time?

A.      Yes.

(Lewis Dep., pp. 72-73) (emphasis added).

The present Jordan's Gym also cannot be considered a mere continuation of Mike's Gym, even if Lewis had owned Mike's Gym and disclosed that ownership to Curves before signing the Franchise Agreement.  Jordan's Gym is located at 770 Shields Road, a location different than the one at which Mike's Gym previously operated.  (Lewis Dep., pp. 10-13).  Moreover, Lewis testified during her deposition that she "was totally out of the exercise business" by July 2006.  (Lewis Dep., p. 59).  While Lewis now claims that she never really closed Mike's Gym and later simply converted it into Jordan's Gym (at a different address), she admitted at her deposition that after March 2006 she could not identify the number of months that the gym operated before moving to its present location, could not confirm that any customers used the gym, and could not identify the name of the person who managed the gym during that time.  (Lewis Dep., pp. 151-52).  In fact, Lewis admitted she did not collect any money from the gym's patrons after March 2006.  As she testified:

Q.      Did you collect any money from the people that were using it?

A.      No.

Q.      You just left the front door open?

A.      You have got to remember that people didn't want it either.

*       *       *       *

Q.      ….Now you are telling me in March of '06 it went from Mike's Gym to Jordan's Gym but you didn't know anything about what—you didn't care.  How did people get in?  You left the front door open for months and people came and went as they pleased, didn't pay any fees, you just didn't care, is that your testimony?

A.      I was out of the exercise business in my mind.  I didn't care.

(Lewis Dep., pp. 153-54).

Lewis has thus confirmed that she was completely out of the exercise business before she opened Jordan's Gym at an address different than the address at which Mike's Gym had previously operated. The building that Jordan's Gym currently occupies was not even completed until the Fall of 2006. (Lewis Dep., p. 27). Lewis' own testimony belies her contention that the facts relevant to her motion are undisputed. Curves is entitled to conduct discovery to learn the true nature of Lewis' involvement in Mike's Gym and Jordan's Gym. Summary judgment for Lewis simply cannot be granted on the limited, disputed record presently before the Court.[2]

To overcome the substantial evidence that is contrary to her position, Lewis relies on an "affidavit" signed by 86 different individuals. That affidavit provides that:

> We the following individuals acknowledge that Linda Lewis Mosbarger was the owner of Mike's Gym in Holtville, Alabama before she became the owner of Curves in Holtville. Both businesses operated simultaneously [sic] side-by-side until Curves went out of business in 2006. I make this statement based upon my personal knowledge having never been convicted of a felony, being of sound mind and having no financial state [sic] in the outcome of this litigated issue.

(Defendant's Brief, Ex. D). Notably absent from that affidavit is any explanation of how those 86 individuals have personal knowledge of the ownership status of Mike's Gym and Lewis' CURVES® franchise. Lewis does not explain who the 86 individuals are or their relationship to her. Moreover, an indiscriminate affidavit such as this is surely not the best evidence of Lewis' interest in Mike's Gym. If Lewis actually owned Mike's Gym prior to 1999, she could readily provide this Court with a contemporaneous document to that effect. No such document has been offered or produced. Merely submitting a conclusory statement from 86 individuals with no obvious connection to this case is hardly the type of undisputed evidence needed to grant summary judgment. *See e.g. May v. A Parcel of Land*, 458 F. Supp. 2d 1324, 1332 (S.D. Ala.

---

[2] Lewis' own brief shows why summary judgment in her favor would be inappropriate. For example, in item 21 of her supposedly undisputed facts, Lewis states that "the Regional Director's testimony at the November 21, 2007, injunction hearing on many issues was mistaken." It goes without saying that a dispute over the veracity of a witness' testimony is not the type of dispute that may be resolved through a summary judgment motion.

2006) ("Of course, statements of speculation or personal belief are generally not proper and are not considered on summary judgment").

Nor has Lewis offered any evidence to suggest that she ever informed Curves about her supposed ownership interest prior to becoming a franchisee. To the contrary, Lewis freely admits that she did not disclose such an interest to Curves. (Lewis Dep., pp. 72-73).

In any event, whether Lewis did or did not have an ownership interest in Mike's Gym is not dispositive, as Jordan's Gym is not a continuation of Mike's Gym. As Lewis testified, she closed Mike's Gym many months before Jordan's Gym opened at an entirely separate address. (Lewis Dep., pp. 59, 151-52). In fact, the building in which Jordan's Gym is currently located was not even completed until sometime in the Fall of 2006. (Lewis Dep., pp. 80-81). Jordan's Gym itself did not open for business until January 2007. (Lewis Dep, p. 79). Thus, according to Lewis' own characterization, Lewis was "totally out of the exercise business" by July 2006, at least six months before Jordan's Gym began operating. (Lewis Dep., p. 59).

Jordan's Gym appears to be a new exercise business that Lewis started after the time she spent "totally out of the exercise business" after her divorce in March 2006. Article 9(B) of Lewis' Franchise Agreement does not permit her to avoid application of the covenant against competition she accepted by closing her allegedly pre-existing exercise business, then later opening a new exercise business that plainly competes with Curves and its franchisees. Whether Jordan's Gym can truly be considered a continuation of Mike's Gym or represents an entirely new business is a factual question that cannot be decided on the record presently before the Court.

The incomplete state of the record alone bars Lewis' motion for summary judgment. As the District Court for the Southern District of Alabama has noted, "the general rule in this Circuit

is that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery." *Baucom*, 506 F. Supp. 2d at 1067, fn 1. A party opposing a motion for summary judgment is entitled to conduct discovery to develop evidence to oppose the evidence submitted by the moving party. *See Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) ("The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits"). Rule 56(f) itself explicitly permits this Court to delay resolution of Lewis' motion pending completion of needed discovery.[3]

Here, Curves has completed only expedited discovery focused on the issues raised by its Motion for Preliminary Injunction. Curves has not yet had the opportunity to conduct full discovery concerning the ownership status of Mike's Gym, Lewis' role in that business, the events that transpired with respect to that business after Lewis' divorce, or the creation and operation of Jordan's Gym. Among other things, Curves has yet to receive customer lists for either Mike's Gym or Jordan's Gym, financial records and tax returns for those businesses, or documents submitted to the State of Alabama in connection with those businesses. In addition, Lewis has now identified 86 individuals who have purported to testify about her ownership interest in Mike's Gym. Curves is entitled to an opportunity to question those individuals regarding the source and extent of their knowledge about that subject. It would be premature to grant Lewis' summary judgment motion before Curves has an opportunity to conduct additional necessary discovery.

---

[3] While Rule 56(f) seemingly requires an affidavit to be submitted to verify that additional facts must be developed through discovery, the Eleventh Circuit has not insisted that such an affidavit be filed. *See Snook*, 859 F.2d at 871 ("In this Circuit, a party opposing a motion for summary judgment need not file an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure in order to invoke the protection of that Rule").

### IV.    THE FRANCHISE AGREEMENT DOES NOT REQUIRE CURVES TO PURCHASE LEWIS' EQUIPMENT

Lewis continues to claim that Curves has a contractual obligation to repurchase the equipment she used in her franchised business. The Franchise Agreement imposes no such requirement. Article 12(A)(8) of the Franchise Agreement requires Lewis to "sell to Franchisor, **at Franchisor's sole discretion and upon Franchisor's demand**, all Quickfit equipment identified in Exhibit B herein owned by Franchisee." (Defendant's Brief, Ex. C) (Emphasis Added). For equipment as old as Lewis' equipment, the *total* purchase price is listed as $1,500.[4]

Curves does not wish to purchase Lewis' equipment. Because the Franchise Agreement leaves repurchase to Curves' sole discretion, Lewis has no claim whatsoever that Curves is contractually obligated to repurchase her equipment.

### V.    CURVES WAS NOT REQUIRED TO MEDIATE THIS DISPUTE

Lewis suggests that Curves breached the Franchise Agreement by failing to seek mediation prior to commencing the instant action. Again, Lewis is mistaken. Article 13 does set forth a procedure for mediating disputes arising out of the parties' franchise relationship. Article 9(C) of the Franchise Agreement makes clear, however, that not all disputes need be mediated before seeking judicial relief. Article 9 addresses Lewis' obligation to refrain from competing with Curves and its franchisees after the termination of her franchise rights. Due to the importance of that issue to Curves' franchise system, Article 9(C) provides that:

> Franchisee acknowledges and agrees that the damage caused to Franchisor by Franchisee's violation of any portion of this Section 9 shall constitute irreparable injury for which there is no adequate remedy at law and, accordingly, acknowledges and agrees that Franchisor may seek enforcement of this Section 9 by temporary restraining order, temporary and/or permanent injunction, and such other legal or equitable relief as may be appropriate.

---

[4] Lewis has claimed in numerous filings that Curves must buy her 10 pieces of equipment for $1,500 per piece, or $10,500 total. Notwithstanding the math error, the contract clearly states that the total purchase price for all the equipment is $1,500 if Curves exercises its option to buy it.

(Defendant's Brief, Ex. C).

Curves' Complaint seeks primarily injunctive relief to stop Lewis from using CURVES®
trademarks in connection with the operation of a competing exercise facility and violating the
covenant against competition. As such, Curves' action falls squarely within the exception to
mediation set forth in Article 9(C). The Franchise Agreement did not require Curves to request
mediation prior to commencing this action.[5]

To the extent this Court believes Article 13 does apply to this dispute, Lewis has waived
any right to mediation by filing a counterclaim against Curves. Rather than invoke the Franchise
Agreement's mediation provision, Lewis instead chose to affirmatively bring her own claim
before this Court. Even now, Lewis has moved for summary judgment on the merits of Curves'
claims rather than seeking to stay this case pending mediation. Lewis' affirmative assertion of
claims and her willingness to have this Court reach the merits of this case are entirely
inconsistent with any desire to mediate.

## VI.    CURVES HAS STANDING TO BRING THIS ACTION

Lewis makes the additional confusing argument that Curves lacks standing to pursue this
case because "the mere fact the Defendant's pre-existing exercise business Mike's Gym…was an
exception to the covenant not to compete, legally blocks the Plaintiff from pursuing a Lanham
Act action, such as this." (Lewis' Brief, p. 9). It appears that Lewis is arguing that Curves lacks
standing to pursue this matter because Jordan's Gym is a continuation of Mike's Gym, which

---

[5] Lewis' suggestion that Curves has been unwilling to negotiate this matter is simply untrue. Curves has attempted
repeatedly to resolve this matter with Lewis, only to be rebuffed by Lewis' outrageous demands. Lewis has never
agreed to stop competing against Curves, but has instead steadfastly denied that she owns Jordan's Gym. Now, in
her summary judgment brief, Lewis suddenly appears to admit that she does own Jordan's Gym, but that her
operation of that gym is permissible under the Franchise Agreement. Mediation will accomplish little so long as
Lewis continues to insist that she can compete with Curves, as enforcement of Lewis' covenant against competition
is the very gravamen of Curves' complaint.

Lewis allegedly owned prior to becoming a franchisee.  To the extent Lewis makes that argument, Curves has already addressed it above.

If instead Lewis claims that Curves has not proven a violation of the Lanham Act, Curves has already conclusively established that Lewis used the same telephone number at Jordan's Gym that she formerly used in connection with her CURVES® franchise.  (Docket 47, p. 9) ("Jordan's Gym used the same phone number as that used by the Curves gym").  That number was advertised in connection with the CURVES® trademarks and became associated in the minds of the public with the CURVES® system.  By continuing to use that same number in connection with a competing business, Lewis violated the Lanham Act.  While Lewis clearly disagrees that Curves is entitled to prevail on its Lanham Act claims, that disagreement does not somehow deprive Curves of standing to pursue those claims before this Court.

## VII.  CONCLUSION

As with other motions filed by Lewis, her Motion for Summary Judgment is not properly supported.  The supposedly "undisputed" facts that Lewis presents in support of her motion are plainly contradicted by her own prior testimony and pleadings.  Lewis has failed to meet her burden of demonstrating a lack of any genuine issue of material fact.  Summary judgment under these circumstances would be inappropriate.  Lewis' motion should be denied.

Dated: February 7, 2008

**GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.**


By s/Michael R. Gray_____
      Michael R. Gray (MN 175602)
      Jason J. Stover (MN 30573X)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-3796
Telephone: (612) 632-3000
Facsimile: (612) 632-4444
mike.gray@gpmlaw.com
jason.stover@gpmlaw.com

and

**JOHNSTON, BARTON, PROCTOR & ROSE**
Joseph W. Carlisle
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, Alabama 35209
Telephone: (205) 458-9458
Facsimile: (205) 458-9500
jwc@johnstonbarton.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a copy of the following:

- Plaintiff Curves International, Inc.'s Memorandum of Law in Opposition to Defendant's Motion to Dismiss/Summary Judgment

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following:

> Connie Morrow
> Charles E. Grainger, Jr.
> cmorrow@graingerlegal.com
> cgrainger@mindspring.com

Dated:  February 7, 2008

GRAY, PLANT, MOOTY,
 MOOTY & BENNETT, P.A.

By  s/Michael R. Gray
     Michael R. Gray (MN 175602)
     Jason J. Stover (MN 30573X)
     500 IDS Center
     80 South Eighth Street
     Minneapolis, Minnesota 55402-3796
     Telephone:  (612) 632-3000
     Facsimile:  (612) 632-4444
     mike.gray@gpmlaw.com
     jason.stover@gpmlaw.com

GP:2323947 v2

14