U. S. DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CURVES INTERNATIONAL, INC.,    )
                                )
        Plaintiff,              )
                                )
v.                              )        CASE NO.  2007-CV-807-MHT
                                )
                                )
                                )
LINDA S. MOSBARGER,             )
                                )
        Defendant.              )

## BRIEF IN SUPPORT OF SUMMARY JUDGMENT MOTION

**COMES NOW** the DEFENDANT LINDA S. LEWIS, by and through undersigned counsel, and requests this Honorable Court to consider the following in this Brief in Support of Defendant's Motion for Summary Judgment and Motion to Dismiss the Plaintiff's Complaint, and dismiss the Plaintiff's Complaint for failing to state a genuine issue of material fact or federal controversy:

1. The Defendant respectfully submits to this Honorable Court the Plaintiff's contortion of the facts in its Brief of February 7, 2008, does not create a federal controversy or a genuine issue of material fact. As this Court is well aware, unsupported conclusory allegations do not bar the granting of a summary judgment.

2. Further, the Defendant seeks to incorporate all items of support previously filed or submitted in this matter in any the form, including, but not limited to the Briefs, affidavits, legal argument, case citation, hearing transcript, and the whole

deposition of the Defendant (where parts were cited by the Plaintiff rather than the whole document) in full; in an effort to not be overly redundant in the record. Likewise, the Defendant asks this Court to take into consideration the affidavits submitted here with, in support of the request by the Defendant of Summary Judgment.

### *Lack of Jurisdiction*

3. Jurisdiction is denied and has been questioned by the Defendant since the filing of the original Answer in this matter, a blanket denial of the Plaintiffs Complaint, including the failure of the Plaintiff to properly give the Defendant service of process. *Fed.R.Civ.P. 4*

4. The Defendant maintains the Plaintiff has failed to sustain its burden of proof on the issues of both subject matter and personal jurisdiction in this matter, as follows:

- The Defendant denies proper process of service (*Fed.R.Civ.P. 4*) of the commencement of this action.

- The Defendant denies interfering in any way with the alleged attempt to give her process of service. There is no way she could have known the Plaintiff was attempting to give her process of service or who Pamela Roy was, even Roy's affidavit admits she did not leave a copy of the Complaint with the Defendant on the day at issue.

- The Defendant denies proper service to its attorney of the initial filings in this matter, including but not limited to the paperwork of the out of state attorneys in this matter, as required by Alabama Rule VII, in particular Section D.

- The Plaintiff's Complaint fails to state a claim for which relief can be granted [*Fed.R.Civ.P. 12(b)(1); 12(b)(6); 56*]since the Plaintiff has failed to prove any damages, a federal controversy or successfully rebut the Defendant's exception to the franchise contract of a being an owner of a pre-existing coed gym which existed prior (1997) to her Curves franchise (1999) and continued to exist past the termination of the franchise agreement in July of 2006. Note, News Article; Affidavits of Landlords-the Goldens, Andrews, Abrams & Roberts; Affidavit of Barbara Fuller; Affidavits of 80+ Members of the Holtville Community; Affidavits of Bass, Brown & Sandlin, either previously filed or filed herewith.

- All 80+ members of the Holtville community have personal knowledge of the ownership of two long term Holtville area gym businesses from their personal observations and experiences in this small, rural community of less than a dozen businesses.

### Breach of Franchise Agreement by Plaintiff

5. The Plaintiff failed to fully abide by the terms of its franchise contract prior to alleging any breach by the Defendant. The "good faith" and "reasonableness" provisions of the contract appear to block by estoppel principles any subsequent attempt by the Plaintiff of contract enforcement. Section # 11. B., 13. A., and 14. E., Franchise Contract. Note some of the many breaches to the franchise agreement by the corporation:

- The Plaintiff breached the franchise contract by demanding return of the equipment in the Complaint without tendering payment of the Defendant's

used Curves' equipment.  In accordance with Exhibit B, Ms. Lewis is due $15,000, or $1,500 per item of equipment; other amounts listed by the Defendant were made in an attempt to settle this matter and are not binding, contrary to Section # 12 and Exhibit B of the franchise contract.

- The Plaintiff Corporation  breached numerous provisions in Section 4 of the Franchise Contract:

    A) The location was never in the city limits of Deatsville, Alabama, note 4.A. and Exhibit A;

    B) The Defendant never received the training provided for in 4. B. and affidavit of support filed herewith;

    C) The Plaintiff never provided the Defendant with manuals on the operation of the equipment, note 4.C.;

    D)The Plaintiff breached the on-going support and training provision, note 4.D..

- Considering the Defendant was not in default at the time she sought to mutually terminate the franchise agreement as allowed by Section 11. C., the Defendant did not in breach the franchise agreement, but merely terminated the contract by going out of business pursuant to Section 11. C.  Also, a mutual termination is allowed by Section 14. C. of the franchise agreement, unless there is a valid reason to disallow such;

- The Plaintiff choose to violate the spirit of mutuality and fair dealing by bringing this Federal lawsuit without first attempting to resolve or mediate this matter.  See, Section 13. A.; Section 13. C.; Section 14. C.

- The franchise contract expressly provides in Section 13. A.:

  "Franchisor and Franchisee have entered into this Agreement in good faith and in the belief that it is mutually advantageous to them. It is with the same spirit of cooperation that the pledge to attempt to amicably resolve and controversy or claim arising out of or relating to this Agreement or the breach thereof or the transaction embodied therein (a "Dispute"), without the necessity of litigation. If a Dispute arises, the parties agree to utilize the procedures outlined herein (Mediation Provisions) before commencing any legal action."

- Since the corporation breached its own franchise agreement in numerous ways prior to instituting this improper action, the Plaintiff under the principles of law and equity should be barred by equitable etoppel and the terms of the franchise contract from pursuing this matter any further.

- In the alternative, the Defendant moves this Honorable Court to mediate this matter pursuant to Section 13; or, the alternative to order mediation in accordance with the provisions of this Court for such, if a summary judgment is not ripe at this time in the Court's opinion, since the Defendant was never given an opportunity to challenge jurisdiction, service of process, or request mediation prior to incurring the expense of defending this factually and legally merit-less action, primarily because of its initial expedited nature.

5. The dispositive issue in this matter is whether the Plaintiff had standing to bring and maintain this action in Federal Court, when the corporation was clearly aware (or should have been aware due go all the inspection provisions contained in the franchise agreement) that its franchise contract provided an exception

(Section 9. B.) for Ms. Lewis' pre-existing a co-ed facility (Mike's, Jordan's, regardless of its name or location) that pre-dated the Curves franchise by approximately two years and was known to exist by Curves and its employees and agents from the beginning of Ms. Lewis' franchise with Curves; in short, was this legal action was improperly brought before this Honorable Court? See, Franchise Contract-9.B., along with various notice and inspection provisions, and Affidavits of Bass, Brown and Sandlin.

6.  The fact the Plaintiff would like to create confusion or non-dispositive side issues in a blatant attempt to re-coup money for failing to properly research the matter prior to bringing this action; or send the proposed Defendant a cease and desist letter **prior** to bringing this costly, out of state federal lawsuit; or, abide by the franchise contract's dispute resolution clauses including a mediation provision, is not the fault of the Defendant. See, Sections 11, 13, 14-Franchise Contract; *See also, Didie v. Howes, 988 F. 2d 1097, 1103-1104 (11th Cir. 1993).*

### Summary Judgment

7.  The number one issue in this matter is whether the Plaintiff has standing to continue to maintain this costly action in Federal Court. *Fed.R..Civ.P. 56; See, Didie v. Howes, 988 F. 2d 1097, 1103-1104 (11th Cir. 1993).*

8.  The one pertinent matter the Defendant agrees with the Plaintiff on is the standard of proof for a summary judgment motion, and the Defendant matains it has sustained its burden of proof since there are know substantive issues of controversy on the material facts in this matter. *Fed.R.Civ.P. 56* A mere disputed fact does not defeat a motion for summary judgment if it does not concern a

material fact. This litigation does not under the facts of this matter rise to a federal controversy or a dispute of a material issue. The Plaintiff has not met its burden of prove in this matter. *Fed.R.Civ.P. 56.*

### *Rule 11 Sanctions*

9.  All actions Ms. Lewis, and her legal counsel, have taken have been in the legitimate defense of this law suit. The Advisory Committee Note to Rule 11 specifies that the rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories…"or to impinge upon counsel's obligation to represent the client to the best of his or her abilities." *Donaldson v. Clark, 819 F.2d 1551, 1561 (11th Cir. 1987).*

10. From the beginning, the Ms. Lewis has maintained improper conduct on the part of the corporate Plaintiff Curves in failing to abide by the provisions of the parties franchise agreement prior to bringing this action along with the ethically questionable actions of the corporation's employees or agents prior to the Defendant having notice of this action. The common denominator between this improper and contractually unwarranted action and a prior improperly filed and subsequently dismissed State Court of Texas action of Curves against this same Defendant, is Kevin Ayers, Curves' in-house legal counsel, who apparently spearheaded or instigated both improper actions. The Texas action was dismissed in 2001, as the Defendant maintains should occur in this matter pursuant to *Fed.R.Civ.P. 11, 12 (b)(1), 12 (b)(6) and 56.*

11. The Defendant did not bring this action or take any defensive tactical moves in bad faith, but asserts that the Plaintiff did in fact bring this action in bad faith

contrary to numerous provisions of the franchise contract, including but not limited to Sections 4, 6, 11, 13 and 14, without legal support and for the prohibited purpose of harassing Ms. Lewis. The Defendant's Counterclaim was brought for safety reasons, and to get the Plaintiff to abide by the franchise agreement.

12. From the beginning this action was unsupported by the Plaintiff's franchise contract at Section # 9. B. which excepts pre-existing gyms from the provisions of said contract, along with mandating mediation prior to litigation at Section 13. Therefore, the Defendant's blanket denial of all allegations of the Plaintiff with a demand of strict proof thereof was proper, and has not been addressed or rebutted by the Plaintiff. To this date, the Plaintiff has not sustained its burden of proof in this action. Additionally, the Plaintiff has not supplied the Defendant with any discovery, despite numerous requests and assurances of intent to comply from the Plaintiff. Additionally, the Plaintiff has not Answered the Defendant's Counter Complaint alleging this action was brought for the improper purpose of harassing the Defendant, and gave numerous examples of such. Under the totality of the circumstances, Rule 11 sanctions are properly sought against the Plaintiff and its legal counsel. Note, the "reasonableness under the circumstances" test stated in *Didie v. Howes, 988 F.2d at 1104 (11th Cir. 1993)*.

13. The corporate Plaintiff Curves knew, or should have known, prior to bringing this action said law suit was legally restricted by its own franchise agreement, or this could have been easily determined by contacting the Defendant or her attorney noted in the October letter of 2006 which sought a mutual termination of the

franchise agreement as provided for in Section # 11. C.  The franchise contract placed the equitable obligation of "good faith" and fair dealing on both the parties and further provided at Section 14. C. :

"Whenever this Agreement requires Franchisor's consent, Franchisee agrees to make a timely written request for such consent. Franchisor will not unreasonably withhold its consent …"

See October 2006 Termination of business letter from Defendant to the Plaintiff offered as Curves Exhibit at the Injunction hearing and Exhibit to Linda Lewis Deposition of November 2, 2007.

In the Defendant's fall of 2006 letter to the Plaintiff, she sought a mutual agreement to terminate the franchise agreement, pursuant to Section 14. C.  In reviewing the request, there is no reason to deny the Defendant's good faith desire to get out a failing business and go on with other business interests.  Note Section 11.C. & 14.C.

### *Amount in Controversy*

14. Clearly, the amount of money in controversy does not meet the jurisdictional guide lines of a federal controversy.  If the contract was fully enforceable and the Plaintiff had not breached any provisions of the franchise agreement, the maximum due under the contract would have been approximately $18,000, or rather $600 per month for the remaining 30 months until March of 2009. However, in light of the numerous breaches to the franchise agreement on the part of the Plaintiff, and Curves standard operating procedure with other franchisee who have went out of business due to financial constraints, very often there would be no attempts to enforce the remaining requirements under the franchise contract.

Or, the amount due under the contract would be limited to the amount in between going out of business, in this case July, 2009 and the letter of termination from Curves, which was in this matter November of 2006, or rather 3or 4 month at the rate of $600 per month. In no way, especially in light of the testimony at the November Preliminary Hearing of the Plaintiff suffering no damages from the pre-existing business continuing to operate past the termination of the Curves franchise, could the amount of controversy ever amount to the Federal Court limit. This matter should be dismissed. *Fed.R.Civ.P. 56*; See, Franchise Agreement.

### *Equitable Estoppel*

15. Plaintiff Curves should be barred by equitable principles from seeking enforcement of a franchise agreement that the corporation has failed to comply with; it is the position of the Defendant Linda Lewis the Franchise Contract was breached almost from inception by the Plaintiff. Additionally, the Plaintiff had actual or constructive knowledge of the following irrebutable facts:

    1. The Defendant had owned and operated a gym prior to, and consistently throughout, the Holtville Curves franchise term from April of 1999 until July, 2006. (News article from 1997; Affidavits of Support)

    2. Curves had a training officer, Linda Smith, at the facility for at least one whole day the week the Curves franchise opened in Holtville, Alabama, who observed both businesses and cut training short since Defendant we already familiar with the exercise business through her ownership of the

pre-existing and flourishing co-ed gym next door (Fitness Express/Mike's Gym). (Affidavits of Support)

3.  Likewise, the Curves Regional Directors Candy and Mike Carver, were aware of the side by side ownership and operation of a pre-exiting gym business (Fitness Express, Mike's Gym) located adjacent to Ms. Lewis' females only Curves franchise when they visited starting in May of 1999. (Affidavits of Support)

4.  Periodically, an additional Curves representative Janie Little, Regional Director of Curves, would come and inspect Ms. Lewis' Curves franchise from 1999 until 2006. This Curves employee was, also aware of, and had no problem with, Ms. Lewis' ownership of the co-ed gym (Fitness Express, Mike's Gym, Jordan's Gym) next door. (Affidavits of Support)

5.  Curves should be estopped by equitable estoppel and contract law principles from attempting to deny knowledge and notice of Ms. Lewis' ownership of the pre-existing co-ed gym next door (first known as Fitness Express, then Mike's Gym until the couple Divorced and the Court in the distribution of their jointly owned marital property awarded sole ownership of both gym businesses to the Defendant in the Spring of 2006 when the name was changed to Jordan's Gym). (Affidavits of Support)

6.  The pre-existing gym was and is an exception to the restraints of the non-compete provision of the franchise contract, in accordance with the language of Section #9. B., as the Defendant has consistently maintained from the beginning of this action. Not one of the facts that the Plaintiff's

counsel chose to rely upon in the Brief of February, 2008, are controlling
in this matter. He Plaintiff maintains he has pointed out many
inconsistencies on the part of the Defendant. However, a closer reading of
the  document reveals rather than creating factual controversies he has
merely misstated  the facts, or rather taken partial statements out of
context which do not support the proposition the Plaintiff is promoting,
when taken as a whole with the Defendant's Answers to Interrogatories,
complete deposition, which the Defendant urges the Court to require the
Plaintiff to submit in accordance with standard  practice and procedure,
and  the full transcript of the Preliminary Hearing, along with all
submitted documents in support of the Defendant's pleadings.  Clearly, the
Court can easily ascertain the Plaintiff's misstatement of facts.  But even
when misstated and slanted in favor of the Plaintiff, the Plaintiff has failed
to rebut the Defendant's Motion for Summary Judgment.  The Plaintiff has
failed to state a claim for which relief can be granted, primarily due to the
exception in Section 9. B. of the franchise agreement, the foundation of
the Plaintiff's Compliant, along with failing to support a federal
controversy or prove jurisdiction. *Fed.R.Civ.P. 56.*

7.  Mike's Gym (prior to the Curves franchise, Fitness Express; after the
Divorce, Jordan's Gym) was located adjacent to the Holtville Curves
franchise at all times the Curves franchise was being operated by the
Defendant [1999-2006], even though the locations changed.  The Plaintiff
should not be allowed to attempt to dispute an irrefutable fact of such with

mere misstatements or incomplete allegations. Even if Ms. Lewis has accidentally misstated a particular fact such as her ownership of the pre-exiting gym from 1997 until December of 2006/January 2007 trade or sale of the equipment to Ken Johnson and lease of her building to Johnson, previously documented for this Court, the issue should not be in dispute, at this stage of this action; in light of the exception of Section 9. B., the sole basis of the Plaintiff 's Complaint. Nothing the Defendant has testified to in her Interrogatories, Deposition or the Preliminary Hearing contravened this fact, and the Plaintiff has not rebutted or raised a genuine issue of material fact which is relevant to the dissolution of this matter via a Summary Judgment. *Fed.R.Civ.P. 56*

8. The Plaintiff's Blind assertions of the need to conduct further discovery is not meritorious. The Plaintiff asked for and was granted expedited discovery in this matter, which under the rules of civil procedure should have been reciprocal. The Plaintiff has conducted discovery and is well aware there are no other documents the Defendant can supply to him because her ex-husband had disposed of such prior to his stroke. Note, deposition. Plus, the Plaintiff should have all the records it alleged it needed since the financial end of Curves was completely electronically generated and linked to Curves headquarters prior to the Defendant's termination of the business. The Defendant cannot be required to produce something she no longer has access to, or is no longer in her possession. This is the main reason from day one the Defendant has been seeking to

obtain Discovery from the Plaintiff both by written request, at the deposition, by e-mail and oral communications, which should have been reciprocal under the rules for Expedited Discovery. The Plaintiff's request for more time for more Discovery is base-less since the Plaintiff did not allege anything it was seeking to obtain could not have been obtained via other means. It is the position of the Defendant every item cited by the Plaintiff as grounds for said request is already in its possession due to the financial link of Curves with its franchisees and requirement all finances must be recorded electronically and submitted to Curves which the Defendant complied with until July, 2006.

9. As stated earlier it is undeniable numerous Curves representatives were aware of the Defendant's prior ownership of a co-ed gym located next door sharing a mailing address and phone number from 1999-2006; specifically at least four (4) Curves employees of representative have toured the facilities since the opening in 1999, specifically Linda Smith-trainer; Candy and Mike Carver- Curves Regional Directors; and Janie Little-Curves Area Director, who periodically came out for updates and training sessions. See Affidavits of Bass, Brown and Sandlin, attached herewith.

10. At no time, did the Plaintiff deliver to the Defendant notice of any problem with the Defendant owning and operating the gym right next door (Fitness Express, Mike's Gym or Jordan's Gym) at any time prior to filing this action  apparently based on the belief Ms. Lewis was continuing to

operate Jordan's Gym. The re-location of the pre-existing gym to a different location is a non-issue since the pre-existing gym had previously changed locations at least once without any problem being alleged by Curves.

11. Likewise, the phone is a non-issue since it was utilized by both of the defendant's gym businesses and said usage pre-dated the Curves franchise and was an exception under the franchise agreement since Mike's Gym had been using the telephone number since 1997 before the Curves franchise stared using the telephone number in 1999. Again, this matter is not dispositive since the Defendant chose to change the number rather than debate the issue with the Plaintiff. This matter is clearly moot, but it was brought up again by the Plaintiff in the February 7, 2008, pleading.

12. Also, the Plaintiff can not rebut that the Defendant's two (2) Holtville businesses, at all times the Curves franchise was being operated by the Defendant, used the same mailing address and telephone number, as stated at the November 21, 2007, hearing and set out in numerous previously filed affidavits, and telephone book listings from 1998 through 2007.

13. Therefore, legally Jordan's Gym should have been allowed to continue the practice of using the same phone number, especially since Curves was out of business, after the Defendant terminated the Curves franchise, in apparent compliance with Section 11 #. C., noting the exception of Section # 9. B. to the franchise contract; and, but for this wrongful litigation the

Defendant's lessor could have continued to utilize the long-time telephone number.

14. Nothing the Plaintiff has pointed out in the Brief date February 7, 2008, has rebutted the Defendant's position that Ms. Lewis was not bound by the non-compete provisions of the Curves contract in the continued operation of a pre-existing business, but this is a moot point since she is not in the gym business and has not been since January, 2007. Likewise, it is a non-issue for this matter that Mike's (or Jordan's Gym after the April, 2006 Divorce) Gym "ran itself" and Ms. Lewis was not an employee of such since she was during all times relevant to the disposition of this matter its owner.

15. The application which the Plaintiff questioned Ms. Lewis about at the hearing was merely seeking employment information, not a full and complete listing of Ms. Lewis' assets.

16. Nothing in the Plaintiff's Brief of February 7, 2008, rebuts the following irrefutable facts: a co-ed gym owned by both the Defendant and her former husband was opened in 1997; this gym used the same mailing address and phone number as the Curves franchise of the Defendant after such was opened in 1999; the Defendant's co-ed gym and her Curves franchise had separate entrances with wall separating the defendant's two businesses the whole time; the Plaintiff Corporation benefited from the Defendant's knowledge of the gym business from the beginning of their association; numerous Curves employees were aware of the Defendant's

ownership of the two gyms and had visited at both locations; at no time in 2006, prior to the Defendant attempting through her then attorney's letter of October 2006 to mutually terminate the franchise (Section #11. C) had there been any indication of any problem with her performance under the franchise contract for that year (2006); the Defendant has been consistent in her testimony that she is not currently in the gym business, that the pre-existing co-ed gym that she owned when she became a Curves franchisee "ran itself" as far a she was concerned; the mere fact the pre-existing gym was jointly owned by two parties who subsequently Divorced is non-dispositive in this matter but it explains why the gym was awarded to the Defendant in the Divorce as was the Curves franchise- this was merely a marital property distribution in a Divorce (this does not in any way indicate she was not a joint owner from 1997 until the Court gave her sole ownership of both businesses in 2006); the fact the pre-existing co-ed gym she owned "ran itself" and she was not employed there but did own it a distinction between ownership of an asset and employment (the fact she later sold or traded such to a friend, Ken Johnson in December 2006 or January 2007 and she owned the new building the gym moved to but leased it to Ken Johnson to use in a number of other ways in addition to giving the old co-ed self-trainers a place to go to work out in Holtville) are all non-controlling issues in this controversy. Bottom line to this matter is that the Plaintiff has failed to prove a genuine issue of **material** fact. Ms. Lewis is not in competition with Curves but if she chose to operate and

manage the pre-existing co-ed gym regardless of its name there are no legal prohibitions to her doing such according to Section 9.B. of the franchise agreement. Curves is not a co-ed gym; plus, the franchise contract allows for the continuation of gyms pre-existing at the time the franchise agreement was signed (it does not define or proscribe this issue any further as the Plaintiff has attempted in the most recent Brief). Ms. Lewis did not act in a manner to breach the franchise contract. In fact, Ms. Lewis has complied with the franchise provisions from 1999-2006 more closely that the Plaintiff Corporation. The Plaintiff has failed to state a federal claim for which relief can be given under the terms of their own franchise agreement. The transition of the Defendant's pre-existing gym during the holiday period of December 2006, to the new leased building in January of 2007, does not raise an issue of fact because either way the Defendant was not competing with the Plaintiff (she was not even operating the pre-existing gym at this time but she could have been if she had so chosen under the pre-existing gym exception to the franchise contract). The Plaintiff has not supported its burden of proof, and as a matter of law this case is due to be dismissed. *Fed.R.Civ.P. 56* A genuine justiceable dispute does not exist in this matter. The Plaintiff own filings in the affidavits of the process server of November ,2007, show Ms. Lewis was by that time (November 2007) was in the plant business at Natural Beauty Garden Center in Wetumka, Alabama, not in the Holtville

gym business debating a pre-existing co-ed gym allowed by the franchise agreement with the corporation's new attorney.

16. The Defendant maintains the Plaintiff breached the franchise agreement prior to this improper complaint being file. The franchise agreement has a "good faith" clause. See, Section 13. A., also 11. B., 14. E. The Plaintiff has not acted in an equitable way toward the Defendant. At no time has the Defendant, or her legal representatives, done anything illegal, unethical or in any way wrongful in this matter, unlike the Plaintiff's filing this action in federal court against the Defendant when number representatives of Curves had actual, first-hand knowledge of the Defendant's ownership of a pre-existing gym and all of the Plaintiff's investigative steps noted at the preliminary hearing indicated Jordan's Gym was a co-ed facility which had been operating with many of the same clients since 1997. Noted testimony of Julie Ferrell and Photos of male attached to complaint. Also note Affidavit of Defendant of Andrews, Roberts, the Goldens, 80+ Community members, Bass, Bown and Sandlin.

17. Proper legal defense measures along with procedural, tactical and client protection procedures do not merit Rule 11 sanction consideration. Especially, considering the Plaintiff's allegations stem from an issue of adding a party which in accordance with the Federal Rules of Civil Procedure may be accomplished by "any party or [the court] of its own initiative at any stage of the action." See, *Fed.R.Civ.P. 21; Ingram v. CSX Transportation, 146 F.3d 858, 861 (11th Cir. 1998).*

18. The Plaintiff, the record shall reflect upon review, has bullied, misrepresented the facts and cast bias in the record with numerous self-serving, misleading and conclusory allegations of employees of the Plaintiff of a derogatory nature against the Defendant from the inception of this lawsuit which undersigned counsel urged this Court to strike.

19. The Defendant has been the victim of both unethical and criminal acts purposely perpetrated by the Plaintiff through apparent authorized actions of its employees and agents in this matter, for instance:

   1. The Defendant suffered an assault to her face on or about September 10, 2007, through no fault of her own, when the Plaintiff's agent through the service of process packet at her hitting her in the face and then retrieving it when it hit the ground without the Defendant having a chance to determine why she had been so assaulted. Note Law Enforcement Report of September 10, 2007, previously filed, Affidavits. [Clearly, prior to any involvement of this law firm in this matter since it occurred prior to the Defendant obtaining a referral from the State Bar Association to this firm for Federal Court legal representation.]

   2. Additionally, the Defendant suffered an incident of criminal mischief when a door knob to her rental building was damaged and had to be repaired on November 7, 2007, after a neighbor had observed someone resembling a Curves representative at the November 21, 2007, hearing (Julia Ferrell) shaking the door when no one was inside the facility. Note Affidavit of Joyce Berry of November 7, 2007; Police Reports of

November 11 and September 10, 2007, regarding actions of September 9, 2007; Locksmith Receipt and Affidavit of Locksmith Kevin Browning.

3. The Defendant was further victimized by the trespass incident of November 2, 2007, the day prior to the Defendant's Deposition, where Michael Gray would not leave the Defendant's rental facility after being requested to do so by both the manager and the Defendant. Note Police Report of November 2, 2007; Testimony at the November 21, 2007 Hearing and Affidavit of Support. See previously filed Affidavit of J. D. Dasinger, Elmore County Alabama Law Enforcement Officer.

4. The facility is located in a residential area and next to the Defendant's house; therefore, the Plaintiff's Attorney appears to have purposely tracked the Defendant down to further harass and intimidate her just prior to the deposition the next day and to have had contact with the Defendant, as he did, in violation of Alabama State Ethical Rule 4.2, which states: *"In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyers knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."*

5. By staying on the premises, after being asked to leave, and the Defendant having to obtain the assistance of a law enforcement officer to finally persuade the Plaintiff's attorney to leave, all the elements if committing the crime of Criminal Trespass, 2nd Degree, a Class C misdemeanor, punishable up to a year in jail, pursuant to the Alabama Criminal Code-

Section 13A-7-3, were committed by Michael Gray on November 2, 2007, in Elmore County, Alabama. Note, Johnson v. State, 611 So. 2d 457 (Ala. Crim. App. 1992), which determined that the crime of criminal trespass does not include the element of "intent" to commit a crime. See Dasinger Affidavit, Affidavits in support of Counter complaint and the Incident Offense Report.

6. At no time has the Plaintiff complied with the notice provisions of compliance with the Alabama State Bar Association Rules Governing Admission to the Alabama State Bar, specifically *Section VII. D.* which was included with the Defendant's Brief of Support for Summary Judgment at Exhibit J, previously filed with this Honorable Court.

7. In consideration of the numerous procedural failures of the Plaintiff's legal counsel, previously listed, the Defendant requests that the Court not get distracted by the Plaintiff's recent re-stating or misstating of the facts of this matter, and rely upon the evidence in support of the Defendant's Motion for Summary Judgment. *Fed.R.Civ.P. 56*

8. This case of a simple exception to a franchise contract related to a pre-existing gym has been overly litigated by the corporate Plaintiff's legal counsel when the Defendant upon retaining legal counsel from mid-October, 2007, has been trying to settle this matter which does not appear to support any meritorious legal dispute, much less a federal court action, or any allegation of damages. *Fed.R.Civ.P. 56*

9. Subsequently, every step the Defendant has taken has been an attempt to amicably resolve this matter, and all such attempts have been summarily dismissed by the Plaintiff without apparent consideration. In fact, the Plaintiff informed the Defendant "No action" of settlement would be entertained until after the Injunction hearing which caused the Defendant to incur excessive attorney fees, and has subsequently maintained no settlement will occur until The Jordan Community Center (formerly Jordan's Gym), which is not under to control or dominion of the Defendant but rather her lessor, ceases operations when it is either an exception to the franchise contract or not covered by the franchise contract at all as a completely separate entity owned and operated by a third party, who is not subject to the restraints of the franchise agreement. The Defendant is out of the exercise business working at a plant business she has an interest in, which has been damaged economically by the harassment and expense of this action. The collateral issue of a lessor operating the pre-existing gym is a non-issue to this action., and materially irrelevant, exempt it helps prove the Plaintiff does not have a genuine legal controversy with the Defendant at this point in time.

10. At the Injunction Hearing, on November 21, 2007, every step the Defendant had taken in an attempt to mediate or settle this matter was ridiculed. The Defendant at all times has merely been trying to resolve this matter without continuing to be victimized financially through the litigation process.

11. This lawsuit in and of itself, has created a financial hardship on the Defendant who was in the initial stages of starting a new horticultural business, as the Plaintiff was informed at least by mid-October, 2007.

12. At no time has the undersigned or the Defendant, taken any unethical, illegal or legally unsupportable action in this matter.

13. Therefore, for record clarification purposes, the Defendant Linda Lewis seeks a favorable ruling on the Motion for Summary Judgment and a Default Judgment on the Counter complaint against the corporation for failing to rebut the request for both in a timely fashion.

14. The Defendant Linda Lewis additionally requests that this court scrutinize the Plaintiff's intent in bringing this action, along with the stance subsequently taken, as closely as it has her admitted less than business-minded entrepreneurial actions and subsequent remedial actions taken in the spirit of settlement which under state law which should never have been allowed at the November, 2007, hearing.

## Summary

15. In conclusion, the Plaintiff has not met its burden of sustaining this action, or rebutting the Defendant's Counter complaint. Legally, the burden of proof in bringing this action was upon the Plaintiff. At all times, the Plaintiff has failed to meet its the burden of proof.

16. Defendant seeks Summary Judgment. Fed.R.Civ.P. 56

17. At all times, the Plaintiff has failed to meet the requisite burden of proof, on the following issues:

- Timely service of process personally delivered and knowingly received by the Defendant or an adult who resides at the same location; *Fed.R.Civ.P. 4*

- Presenting a verifiable breach of contract action, of which all other claims of the Plaintiff derives foundational support, in consideration of the Section 9. B. exception for pre-existing businesses;

- Failing to prove that Defendant breached the franchise agreement rather than merely terminated the contract for financial reasons in accordance with the terms of the contract;

- Failed to file a timely Answer on behalf of the Plaintiff-Curves to the Defendant's Counter Complaint;

- Failed to rebut the Defendant's timely request for Default Judgment;

- Failed to present an actionable federal subject matter issue or controversy under the undisputed circumstances and facts;

- Failed to respond to the repeated Discovery Requests of the Defendant-Linda Lewis;

- The Plaintiff has no remaining Discoverable issues pending in this matter;

- The Plaintiff failed to prove any Damages;

- The Plaintiff failed to comply with the State Bar Association's Rule for Out of State Attorneys, specifically Rule VII.D.,

submitted as Exhibit J to the Defendant's Brief In Support of Pending Motions/Summary Judgment Motion, among other ethical considerations previously cited related to talking to opposing party without the permission of their legal counsel outside of the party's legal counsel's presence;

- Bottom-line, the Plaintiff has failed to rebut the Defendant's defense of authorized exception of pre-existing gym pursuant to the franchise contract at Section #9. B., as further set out in this Brief and the two prior Briefs filed in this matter along with all prior documents in support either previously filed or attached hereto. In addition to the fact, the Defendant is no longer in the exercise business, and the Plaintiff has not suffered any damages according to the Preliminary Hearing testimony.

Respectfully submitted,

_____
Connie J. Morrow
(#ASB-6870-O78C)
Attorney for LINDA S. LEWIS

OF COUNSEL:
Grainger Legal Services, LLC
4220 Carmichael Court, N.
Montgomery, Alabama 36106
Tel. (334) 260-0500
Fax (334) 260-5580
E-mail cgrainger@graingerlegal.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned verifies a true and accurate copy of this document has been delivered to the following (Defendants and purported legal counsel) by placing on this date a copy of such in the U. S. mail, proper postage prepaid, on this the 8th day of February, 2008, and addressed as follows:

Joseph W. Carlisle
William D. Jones, III
JOHNSTON, BARTON,  PROCTOR & ROSE, LLP
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, AL    35209

Jason J. Stover
Micheal R. Gray
GRAY, PLANT, MOOTY, MOOTY & BENNETT, PA
500 IDS Center, 80 South Eighth Street
Minneapolis, MN    55402

Connie J. Morrow
(#ASB-6870-O78C)
Attorney for LINDA S. LEWIS

**DOCUMENTS OF SUPPORT**

U. S. DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CURVES INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2007-CV-807-MHT |
| | ) | |
| | ) | |
| LINDA S. MOSBARGER, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF KEVIN BROWNING

My name is Kevin Browning.  I reside at 309 Golson Road, Prattville, Alabama  36067.

After having been a locksmith for a number of years, I currently own and operate Kevin's

Keys.  On November 7, 2007, I was requested to examine an outside door to a building

located at 770 Sheilds Road, Deatsville, Alabama  36022, just north of Holtville in the

"Possum Trot Road" community.  Upon arriving, I discovered a relatively new door with

a lot of scratches around the knob of the door.  In my professional opinion, after years of

being a locksmith and repairing many locks that had been vandalized, this door had been

damaged by someone either trying to or actually gaining entry to the building without a

key for the door.  I received market value compensation of $51.78 to repair the lock on

the building's front door which appeared to have been vandalized a while before this

repair was completed due to the aged appearance of the scratch marks on the otherwise

new looking door.  I am over the age of 19 years old.  This statement is true and correct

to the best of my knowledge.

This concludes my statement.

Dated this the 4th day of February, 2008.

_Kevin Browning_
KEVIN BROWNING

### **Notary Certification**

I , Kelle H. Garmon the undersigned authority, a Notary Public in and for said State at Large, hereby certify that KEVIN BROWNING  name is signed in the foregoing, and who is  known to me, acknowledged before me on this day, that being informed of the contents and being of sound mind verified the truth and  veracity of the forgoing and voluntarily executed this document after being duly sworn.

Given under my hand and seal this the ____4th____ day of February, 2008.

_Kelle A. Garmon_
NOTARY PUBLIC

**My commission expires:**
NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: June 19, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

# *AFFIDAVIT*

State of *ALABAMA*

County of *ELMORE*

Personally came and appeared before me, the undersigned Notary, the within named **Candie Spivey (Bass)** who is a resident of *ELMORE* County, State of *ALABAMA*, and makes her statement and Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of her knowledge.

**STATEMENT:**
My name is Candie Spivey (Bass). I reside at 87 Guy Road, Deatsville, AL 36022. On May 8, 1999, I was employed by Linda Mosbarger (Lewis) when she held her Grand Opening of an exercise facility called Curves For Women. The Curves For Women facility's address was 97 Lightwood Road in Holtville, AL and was located in the front of the Lake Pharmacy Drug Store. Linda and Mike Mosbarger had already owned an existing gym called Fit Express II (renamed later to Mikes' Gym) since 1997. The Fit Express, II Gym sat in the back of the Lake Pharmacy Drug Store at 97 Lightwood Road, Holtville, AL. Her landlords at that time were Robert and Elaine Golden. Fit Express II was a coed gym to where people would just come and go as they pleased. In May of 1999, Linda Mosbarger (Lewis) opened an all women's gym so the women and men could have separate gyms to work out in.

On that day, May 8, 1999, I remember a Curves Area Director (and mentor) by the name of Linda Smith arriving late for the Grand Opening. I remember her making a comment about the area being so rural that she had trouble finding Holtville, AL. The Curves corporate office in Waco, Texas sent Ms. Smith down to help Linda Mosbarger (Lewis) with her grand opening. Linda Smith was suppose to stay for one week to help Linda Mosbarger (Lewis) open her new facility, however, she only stayed one day. On the very same day of the Grand Opening of Curves For Women in Holtville, AL, Linda Mosbarger (Lewis) and I showed Linda Smith the Fit Express II Gym. (later renamed to Mike's Gym) Linda Smith made no comments or objections to the Fit Express Gym sitting side-by-side of the Curves Gym.

Also, about a month after Linda Mosbarger (Lewis') Curves facility opened, Curves Regional Franchise Directors, Candy and Mike Carver (husband and wife) from Batesville, MS visited the Holtville/Slapout Curves. Linda Mosbarger (Lewis) and myself showed Candy and Mike Carver the Fit Express, II Gym (later Mike's) and neither director were concerned about the other gym after seeing both gyms had a separate entrance and exit. I remember Linda Mosbarger (Lewis) and myself showing them the parking lot out back for the Fit Express, II. Gym.

Dated this the ___4th___ day of February 2008.

Signature of Affiant

Sworn to and subscribed before me, this the ___4th___ day of February, 2008.

NOTARY PUBLIC

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: June 19, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

My commission expires _____

# *AFFIDAVIT*

State of *ALABAMA*

County of *ELMORE*

Personally came and appeared before me, the undersigned Notary, the within named **Jean Brown,** Who is a resident of *ELMORE* County, State of *ALABAMA*, and makes her statement and Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of her knowledge.

## STATEMENT:

My name is Jean Brown. I reside at 130 Jeans Drive, Deatsville, AL 36022. In the Fall of 2005, I was working out at the Holtville, AL Curves For Women Facility. I remember a lady coming through the Holtville Curves For Women facility entrance at 10009 Holtville Road, Holtville, AL right before lunchtime. One other elderly person (Mrs. Lois Farmer) and myself were the only two people on the circuit that day. Linda Mosbarger (Lewis) (the owner of Curves For Women and Mike's Gym in Holtville, AL) introduced the visitor to me and Mrs. Farmer, as Ms. Janie Little, the Area Director for Curves For Women. Ms. Little and Mrs. Mosbarger (Lewis) walked around the Curves For Women Gym and Mike's Gym for about 10 minutes and stood talking in front of the gym for about 15 minutes more. Both gyms closes (Curves For Women and Mike's Gym) at noon so Linda, Ms Little, Ms. Farmer and myself all left about the same time.

Please know for the record, that Linda Mosbarger (Lewis) has owned Mike's Gym for a long time. The gym opened in 1997 at 97 Lightwood Road, Holtville, AL in the back of the Lake Pharmacy Drug Store building. When the gym first opened, it was called Fit Express II (a co-ed gym) and was later renamed Mike's Gym (men only). Mike's Gym was in full operation the day that Ms.Little visited. Also, Mike's Gym had a separate front and back entrance at both locations, 97 Lightwood Road, and the 10009 Holtville Road address.

Dated this the ____ 4th day of February 2008.

**Signature of Affiant**

Sworn to and subscribed before me, this the 4th day of February, 2008.

**NOTARY PUBLIC**

My commission expires    NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: June 19, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

# *AFFIDAVIT*

State of *ALABAMA*

County of *Montgomery*

Personally came and appeared before me, the undersigned Notary, the within named **Valerie Sandlin** Who is a resident of Montgomery County, State of *ALABAMA*, and makes her statement and Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of her knowledge.

**STATEMENT:**

My name is Valerie Sandlin. I reside at 47 Bramble Pass, Cecil, AL 36013. In 2000, I bought a Curves franchise. My Curves was located in Montgomery, AL, however I sold my Curves to my partner Jennifer Hand in 2003.

In 1990, I owned a gym in Holtville/Slapout, Alabama. The gym was co-ed. When I found out I was pregnant with my second child I closed the gym to be a stay-at-home mom. In 1997, Mike and Linda Mosbarger re-opened the facility beside the Lake Pharmacy Drug store. The gym continued to be co-ed, however, people just came and left as they pleased. In 1999, Linda Mosbarger decided to purchase a Curves For Women franchise. I was there on May 8, 1999, when Linda Mosbarger had her Grand Opening and a Curves representative by the name of Linda Smith came down to help Linda open her facility. Linda Smith knew there was a men's gym at that time, and I remember her making a statement to Linda Mosbarger that as long as there was a separate entrance that Curves would have no problem with the men's gym being side by side. I worked out the same day of the Grand Opening, May 8, 1999. I remember it was a huge Grand Opening because there was already a gym established with men and women working out.

Dated this the 4th day of February 2008.

_____
**Signature of Affiant**

Sworn to and subscribed before me, this the 4th day of February, 2008

_____
**NOTARY PUBLIC**

My commission expires NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: June 19, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS